# E. BUTLER CARPENTER *vs.* HARVEY WILSON.

*Estoppel of Landlord to Enforce Forfeiture of Lease for Failure to Pay Rent When Due.*

A landlord is estopped to enforce the forfeiture of a lease for non-payment of rent at the exact time stipulated when he has previously accepted payments made when overdue and has made no demand upon the tenant for prompt compliance with the covenant relating to rent.

The lease of a house and lot for five years gave to the lessee the option to purchase the premises for a designated sum at the end of the term, and provided that he should have the right to move his trade fixtures if he did not purchase. The lessee covenanted to pay the rent on the first day of each month and to pay all water rent and to keep the premises in good repair. The lease further provided that if the rent was not paid when due, or any other covenant not performed and such nonperformance continued for the space of thirty days, then the lessor should have the right to re-enter without demand or notice, and the tenancy should then cease. The lessee went into possession and made valuable improvements, expecting to purchase the property at the end

of his term. For three years the rent was not paid on the days it fell due, but was paid and accepted by the lessor without objection, between the tenth and fourteenth days of each succeeding month. The lessor then assigned the lease to the plaintiff who accepted the payment of the rent in the same manner for four months, when, without any demand upon the tenant, he brought this action of ejectment, alleging a forfeiture of the lease for non-payment of the rent upon the first day of each month and also because the lessee had failed to pay the water rent and had not kept the premises in good repair. The lessee tendered the rent, but the plaintiff refused to accept it. The lessee's plea for defense on equitable grounds set forth the above facts and alleged his readiness to pay the rent and water rent according to the covenant of the lease. *Held*, that this plea, which was sustained by the evidence, is a bar to the action, and the plaintiff is estopped under these circumstances from enforcing a forfeiture of the lease for non-payment of the rent exactly at the times when due, since he had not demanded such payment, but accepted payments when in arrear.

Appeal from the Circuit Court for Allegany County (HENDERSON, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*Albert A. Doub* (with whom was *D. James Blackiston* on the brief), for the appellant.

Acceptance of rent after it was due for months preceding the month in which forfeiture was claimed can create no waiver. "The receipt of rent after a breach of covenant does not operate as a waiver, unless the rent received accrued subsequently to the act which works the forfeiture." *Morrison* v. *Smith*, 90 Md. 83. If the forfeiture arises from the breach of any covenant except for the payment of rent, Courts of equity ought not to relieve, but should leave the parties to their remedies at law. *Story on Equity*, sec. 1321. Unless the facts pleaded are such that a Court of equity would restrain the execution of a judgment, they cannot be set up as an equitable defense in an action at law. *Williams* v. *Peters et al.*, 72 Md. 586.

If a judgment had been secured against the defendant in this case, a Court of equity would certainly have been power-

less to restrain the execution upon a bill filed by the defend-
ant upon the allegations which are contained in this plea. For
nearly two years he neglected to pay the water rent, and gives
absolutely no excuse for his laches; without the consent of
the lessor, he made the changes in the property, and he never
made any attempt to pay the rent in accordance with the lease;
and it ought not to be permitted that a lessee can allege his
own default for the purpose of invoking a Court of equity to
protect him from the consequences of those defaults. The
plea is so manifestly bad that the demurrer should have been
sustained.

No formal re-entry was necessary other than the bringing
of the suit, but that the bringing of the suit in ejectment, and
the service of the declaration and notice, was a sufficient entry
under the terms of the lease. *Shanfelter* v. *Horner*, 81 Md.
629; 2 *Poe*, sec. 497.

The rent was not paid when due, and there were other vio-
lations of the contract, and such non-payment of rent and vio-
lation continued for more than thirty days, and so the plain-
tiff had the right to re-enter without demand or notice, and
upon *such* re-entry this tenancy ceased. The lease required
a re-entry without demand or notice, and could not have
meant a formal re-entry, for there can be no formal re-entry
without demand or notice. The words *"such re-entry"* indi-
cate the formal re-entry was not required. *Shanfelter* v. *Hor-
ner, supra.*

*Robert H. Gordon* (with whom was *A. A. Wilson* on the
brief), for the appellee.

Pleas upon equitable grounds have been sanctioned in ac-
tions of ejectment. *Mountain Lake Park Association* v. *Shart-
ser*, 83 Md. 13, and 86 Md. 337, and by the case first cited it
is made the duty of the defendant to make his defense at law
under the Code, and not to rely on equity, except in cases
where the Court of Law has not concurrent jurisdiction with
Courts of equity. *Connor* v. *Groh*, 90 Md. 682.

The second and third pleas of the defendant are based upon

the general theory that the action of ejectment must be brought in Maryland, at the present time under one of the statutes, Code of 1882, Art 75, sec. 71, which applies to all cases of ejectment, and sec. 73 of the same Act, which only applies to all cases of landlord and tenant. The history of the Act of 4 Geo. 2, 28, upon which this act is based, and the reason for its passage is given. Note 16 to the case of *Duppa* v. *Mayo*, 1 Saunders, 287.

That Act was passed to obviate the difficulties which the landlords had of making the re-entry under the niceties of the common law, and it was in force in Maryland, until somewhat changed and re-enacted by the Act of 1872. Now this action under this particular lease must be brought under either one of these Acts. If it is done under the provisions of sec. 71, then all the common law requisites must be shown to have been complied with. If brought under sec. 73, then an action cannot be maintained unless the requirements of that act have been shown to have been violated by the tenant. The second and third pleas are framed to meet the double contingency that the suit was brought under either of said sections, because there was nothing in the *narr.* to indicate which one was relied by upon the plaintiff. Under the circumstances the defendant was under the necessity of pleading all the facts which would be a bar to a recovery under either statute.

These pleas are good, because an actual re-entry was necessary, and that a constructive re-entry, either at common law or under the statute, was not sufficient under the provisions of this lease.

It will be observed that the tenancy was not to cease until *after the re-entry*, and that there was no forfeiture of the lease upon the mere non-payment of rent. Parties may make an agreement for forfeiture, and the Courts will not protect them against their own acts. *Morrison* v. *Smith*, 90 Md. 83.

But the distinction between the cases where a lease is declared by its terms to be null and void for the non-payment of rent and one where a right of re-entry are given are clearly marked. As said in note 16 to *Duppa* v. *Mayo*, 1 Saunders,

287. "If there be a lease for years, with a condition that for non-payment of the rent * * the lease shall be null and void * * the lease is absolutely determined, &c." "But if in such a lease the clause be that for non-payment of rent it *should be lawful for the lessor to re-enter*, the lease is only *voidable*, and may be affirmed by acceptance of rent due, accrued thereafter, or other act." And this principle is distinctly recognized in the case of *Morrison* v. *Smith*, 90 Md., above cited. The Court has recognized these distinctions in the case of *Shanfelter* v. *Horner*, 81 Md. 628, where it is said that provisos of this sort are to be "construed as other contracts." The parties agree to a tenancy on certain terms, and there is no hardship in binding them to those terms. The right reserved in the lease was a right to the lessor or her agent to re-enter *"the said premises"* and after *such* re-entry this tenancy shall cease. Now in this case the plaintiff would attempt to stretch the plain language of the lease so as to avoid the necessity of an entry by the *lessor* or her *agent* on the premises, and make a mere action of ejectment take the place of the actual re-entry on the premises. In that case we would have the absurdity of the re-entry being completed *before* suit brought by the act of bringing the same suit. Or to state the case differently. The tenancy would not cease until after the suit was brought, if the bringing of a suit is equivalent to a re-entry, and the plaintiff's right to sue would not be complete until after the suit was brought to determine the tenancy. This is a legal absurdity more fictitious than any fiction that has been evolved in this most fictitious of actions. *Shanfelter* v. *Horner*, seems to be conclusive of this subject. If the lease is to be void upon breach of condition, then no re-entry or demand was necessary, but if the lease was to terminate only after re-entry, then the re-entry was necessary to complete the right, and as this lease says a *re-entry on the premises*, the Courts will hardly make an action of ejectment take the place of the plain terms of the contract.

The first rent for the month of April was paid in the early part of May following, and thus it continued during lessor's life.

The lessor, and the lessee, thus, at the outset of the lease placed their construction upon its terms, and agreed, by their conduct, that the rent was not payable for the first month until the first of the succeeding month.   There is absolutely nothing in the lease which requires the rent to be paid in advance.   The payment of the rent is a condition subsequent to the leasing and entry of the defendant, and was so treated by both parties. "The rent was payable monthly on the first day of each and every month during the continuance of this demise."   There being no distinct agreement to pay in advance, the Court will not try to make such a construction, especially when the parties have placed their own construction upon its terms.   *Hilsendegen* v. *Sleich*, 55 Mich. 476.

FOWLER, J., delivered the opinion of the Court.

This is an action of ejectment brought by E. Butler Carpenter, the assignee of the lessor, against Harvey Wilson, the lessee, to recover a lot of ground and the improvements thereon, situated in the city of Cumberland, this State.

On the 28th of February, 1900, Catherine Smith, the then owner in fee of the lot in question, leased it to Wilson, the appellee, for the term of five years from that date, in consideration of the payment of twenty-five dollars per month, payable monthly on the first day of each month.   The tenant covenanted to pay the rent and to keep the premises in as good repair as they were when he took them and further agreed that if the rent was not paid when due, or upon any other violation of the contract and such non-payment of rent and violation of contract shall continue for the space of thirty days the lessor could re-enter the said premises without demand or notice and upon such re-entry the tenancy should cease.   The tenant also agreed to pay all water rent, and the lessor covenanted for herself, her heirs and assigns, at the end of said term of five years to sell and assign to him in fee-simple, clear of all incumbrances, the aforesaid premises, &c., for the sum of four thousand dollars—with a proviso that if the tenant should not exercise his option of purchase, he shall

have the right to remove such trade fixtures as he may have placed on said property during the lease.

From the date of this lease, viz, 28th of February, 1900, until December, 1903, the appellee as tenant held the premises in question and paid the rent.   The rent, however, was not paid on the first day of each month as required by the lease, but from the tenth to the fourteenth of the month following the month when it accrued.   Nor was the water rent paid at all.

Under these circumstances the appellant became the owner of the premises, and for several months the rent was paid to him as it had been paid to his predecessor in title, that is to say the rent for the month of August was paid to and accepted by him on the 10th of September, 1903, for the month of September on the 10th of October, for the month of October on the 14th of November and for the month of November on the 9th ·of December.   However, on the 2nd of January, 1904, before the usual and customary time for the payment of the rent of preceding month, the appellant brought this action.

The *narr.* is in the usual forms.   Three pleas (amended) were filed on the 10th May, 1904.   There was a demurrer filed to the pleas.   The Court below overruled this demurrer and the trial proceeded before the Court without a jury. Considerable testimony was taken by both sides, but the only exception we find in the record is that taken by the appellant to the rejection of his three prayers.   By reason of the overruling of his demurrer and the rejection of his prayers the plaintiff below has appealed, the judgment below having been in favor of the appellee.

But inasmuch as we are of the opinion that the question involved in the demurrer to the pleas controls this case, we will proceed to discuss that question without adverting to the ruling upon the prayers.

The plea which we will consider is the first of the three amended pleas filed on the 10th of May, 1904, which is a plea for defense on equitable grounds.

It will be observed that the lease not only grants to the lessee a term of five years but it gives to him an option to purchase the premises upon the expiration of that term for the sum of four thousand dollars, and further provides that if such option should not be exercised the tenant shall have the right to remove such trade fixtures as he may have placed upon the property during his tenancy. After alleging that the appellee went into possession of the premises under the said lease, the plea sets out the lease in full and alleges that relying upon the provisions of said lease and the covenant of the lessor for the sale of said property at the end of the said term, he placed large and valuable improvements upon said property; consisting of an oven for the baking of bread and placed in said property expensive machinery and engines and boilers and made many permanent and substantial repairs and improvements to the various buildings thereon, amounting in all to the sum of eleven hundred dollars, so as to fit the same for the uses and purposes of a steam bakery, for the manufacture and making of bread, all of which improvements were made with the expectation that he would become the purchaser of the property at the end of five years ; that the appellant became the owner of said premises in July, 1903, subject to the said lease; that during the three years of the term before the appellant became the owner of the premises the rent was always paid to the original lessor and also to the appellant after he became the owner, as follows : the rent for each month was paid between the first and fourteenth of the succeeding month ; that this habit or custom of so paying rent was continued until December 9th, 1903, when the rent for the preceding month was paid and accepted by the appellant without objection. The plea further alleges that the appellee according to and relying upon the custom which had arisen and been maintained between himself and the appellant, did not pay the December, 1903, rent during the month and the appellant brought this suit 2nd January, 1904, before the usual and customary time for the payment thereof ; and that before any re-entry had been made on said premises and be-

fore the customary time for paying the same the appellee tendered said rent but the appellant refused to accept it and claimed that the lease was forfeited and that the water rent had not been paid as provided thereby; that by reason of said dealings between the appellant and appellee the appellant is estopped to contend that said rent was payable in any other manner than the manner in which he had been accustomed to accept and receive the same; that the appellee has always since the first of December, 1903, been ready and willing to pay said rent when due and demandable whether in advance or according to the custom which was established between the appellee and appellant but that the appellant has refused, &c.; that the appellee has always been ready and is now willing to do and perform all the conditions of said lease and that he is also ready and willing to pay all bills for water rent but none have ever been presented to him by the appellant or by any body else and that to allow the appellant now to insist upon a forfeiture would be a fraud upon the appellee and work irreparable injury, destroy his business, and deprive him of the benefit of his improvements which he has made in contemplation of the purchase of said property at the end of the lease.

We have thus set out at length the equitable grounds upon which the appellee relies in this case—and the only inquiry is whether they constitute a good defense.

The demurrer, of course, admits the facts, but besides this the case having been tried upon this plea, the Court below sitting as a jury must have found them to have been proved by the testimony, otherwise a judgment for the defendant would not have been entered. But assuming that the facts alleged in the plea are true it follows that from the time the lease was entered into by the appellee and the original lessor the rent was paid for over three years as set forth in the plea. No objection was ever made to this mode of payment. The same method was adopted by the appellee and the appellant, until suddenly, without any complaint and without any demand, the appellant resorted to the harsh provisions of the

lease by which he expected to be able to have the lease for-
feited and the premises with all the valuable repairs and im-
provements confiscated for his own use without any compen-
sation to the appellee. No Court of equity would tolerate
such a course of action. A very different case would be pre-
sented if the landlord had not for a long time accepted the
rent without objection after it had accrued, and had on the
first attempted payment of the rent in arrear refused it and
claimed a forfeiture. We do not mean to say that the fact
alone of the long continued receipt of rent by the appellant
when it was overdue constitutes an equitable defense, for it
was just such a situation which we said in *Morrison* v. *Smith*,
90 Md. 84, might be offered in evidence in a suit at law as
tending to show a waiver of forfeiture. But this fact in con-
nection with the allegations of the plea in regard to improve-
ments made by the appellee and with those relating to the
provisions of the lease by which the lessee was enabled to ac-
quire the property in fee present just such a case as a Court
of equity would and should entertain. It cannot be ques-
tioned we think, that if the appellant instead of putting his
defense in the shape of an equitable plea had filed a bill in a
Court of equity setting forth the same facts, an injunction
would have issued prohibiting the appellant from prosecuting
his ejectment.

In 2 *Story's Equity Jurisprudence*, sec. 1321, it is said that
it is admitted that where the condition or forfeiture is merely
a security for the non-payment of money (such as the right of
re-entry upon non-payment of rent) there it is to be treated as
a mere security and in the nature of a penalty and is accord-
ingly relievable in equity. See also 18 *Am. & Eng. Encyl.*, p.
389. Especially would this relief be granted to this appellee
who tenders himself ready not only to pay all the accrued rent
but also to pay all the overdue water rent. While it is true
that a breach to pay water rent is also a cause of forfeiture,
and the plea admits that the appellee has failed to pay such
rent, yet in our opinion the appellant should have demanded
its payment and having failed so to do it would not be equi-

table under the facts alleged in the plea to allow him to enforce a forfeiture for such non-payment. 18 *Am. & Eng. Encyl.* (Landlord and Tenant), p. 373. And especially should this view prevail when the appellee offers to pay the amount of the water rent into Court or whenever he can ascertain the amount due. We are unable to see any distinction between the effect of the non-payment of the rent of the premises and that of the water rent. In the first case it is admitted that equity has jurisdiction. Thus JUDGE STORY says, sec. 1322, 2 *Equity Jurisprudence*, that in other cases of covenant beside covenants to pay rent if the damages are capable of being ascertained and will in a legal or equitable sense be an adequate compensation the reason is not very clear why under such circumstances the forfeiture may not be equally treated as a security for such damages, and a forfeiture prevented by the payment of the money, the rent in one case and the water rent in the other with interest. But aside from this view we are of opinion that the rule which has been adopted in regard to taxes should be applied to the failure to pay such a public charge as a water rent. The rule is this "To entitle the landlord to enforce a forfeiture for the breach of a covenant to pay taxes he must make a demand on the tenant to pay the same." 18 *Am. & Eng. Encyl.* (Landlord and Tenant), p. 375, note 9.

The third and remaining ground of forfeiture relied on by the appellant is the alleged failure of the appellee to repair. But is there in this respect any violation of the covenants of the lease? The plea alleges that the appellee has made many permanent and substantial repairs to the premises, and that as to all the other conditions, provisions and undertakings on his part reserved to be done in said lease, he has performed the same or been relieved from performance by said appellant. These allegations we are to assume to be true, and if so, there would not seem to be a violation of the covenant to repair. But if, as the case is now presented on demurrer, we were permitted to examine the testimony adduced on this subject during the course of the trial we should be obliged, as doubtless

did the learned Judge below, to come to the conclusion that there was a complete failure to show any violation of the lease in this respect.

*Affirmed with costs to the appellee, above and below.*

(Decided November 16th, 1904.)