## CHARLES G. FELDMEYER *vs.* ROBERT L. WERNTZ.

*Appeals*: *questions for review, without special exceptions; de-
murrers; rulings of lower Court on——.   Equitable defenses*:
*defenses pleadable at law.  Landlord and tenant*: *leases;
tenant holding over; renewal.   Ejectment.    Res
adjudicata.    Pleas*: *conclusions of law.*

An appeal from the final judgment of a civil court brings up
the Court's rulings on demurrers to pleas and replications
without any bill of exceptions or writ of error.        p. 287

A defense which is a good defense at law can not be pleaded as
an equitable defense.                                   p. 287

In an action of ejectment by a landlord against a tenant on the
expiration of a lease, an equitable plea based on the fact that
the lessor or his successors did not exercise their option of
purchasing the improvements made by the lessee, or offer to
appoint appraisers as provided in the lease, and gave no
notice to vacate, etc., is a valid plea.          pp: 289, 296

An agreement between a lessor and lessee, providing that the
lessor may occupy the second story of the building, the lessee
to pay taxes, is equivalent to rent.                    p. 289

Pleas are erroneous that involve conclusions of law.    p. 290

In an action of ejectment by a landlord against a tenant the
question whether or not the lease is still in force, whether the
defendant is not legally in possession under the lease, is prop-
erly raised by the prayers and not by alleging legal conclu-
sions by way of a plea.                                 p. 290

In an action of ejectment for the restoration of possession and
future damages of property held under a lease, by the terms
of which no rent was to be paid but in which the lessee was
to keep and maintain a certain space for the lessor, evidence
is admissible on the part of the plaintiff to show what a fair
value of rental would be, in order to estimate damages.  p. 291

The defense of *res adjudicata* should be made by a special plea.
                                                        p. 290

To constitute a valid defense on the ground of *res adjudicata,*
there must be identity of parties, a decision of the case on its
merits, and the jurisdiction of the Court over both the parties.
                                                        p. 292

The former decision need not have been on the precise point; a judgment or decree in *res adjudicata* as to all matters of defence existing and which were available to the defendant at its date.                                              p. 292

Where the lessor covenants for the renewal of the lease, or to pay for the improvements made by the lessee, the option rests upon him; the lessee can not compel a renewal, and if the landlord elects to renew later, the tenant can not require payment for the improvements.                          p. 294

In such a case if the landlord fails to exercise either of his alternative rights, he is bound to give a new lease for a like term, and if the tenant remains in possession with the landlord's consent, a renewal of the term is presumed according to the original conditions of the lease.          p. 296

*Decided January 14th, 1913.*

Appeal from the Baltimore City Court (ELLIOTT, J.), to which Court it had been removed from the Circuit Court of Anne Arundel County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Jesse Slingluff* and *Frank Gosnell* (with whom was *Robert Moss* on the brief), for the appellant.

*David G. McIntosh* and *James W. Owens* (with whom was *Frank H. Stockett* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In April, 1910, Robert L. Werntz instituted a suit in ejectment against Charles G. Feldmeyer in the Circuit Court for Anne Arundel County, to recover possession of the premises in the City of Annapolis, known as No. 48 Maryland avenue. The size of the lot was said to be 20 by 90 feet, adjoining the Annapolis Opera House, formerly known as The Masonic Hall, and the declaration sought a recovery of the land and $1,200 damages.

To this declaration the defendant, appellant here, filed—first, a plea of *non cul.* The case was then removed to Baltimore City for trial, and after its removal there, additional pleas were filed, the second being a plea upon equitable grounds; the third, that the defendant was holding the property under the provisions of a lease thereof set out in the equitable plea; and fourth, that the defendant so holding the property had performed all stipulations and covenants contained in the lease to be by him performed; and the fifth plea set up, that the matter in controversy was *res adjudicata.*

The plaintiff demurred to the second and third pleas, and filed a motion of *ne recipiatur* as to the plea of *res adjudicata,* and the demurrer and motion were subsequently sustained.

The action of the lower Court in this regard presents the first matter for consideration. An appeal from the final judgment in a civil action brings up for review the action of the trial Court in its rulings on demurrers to pleas and replications, and no bill of exceptions or writ of error designating the point of law is necessary. *Kendrick & Roberts v. Warren Brothers,* 110 Md. 76.

The sufficiency or insufficiency of equitable pleas has been frequently before this Court, and the authorities were very fully collected in *Bond* v. *Murray,* 84 Atl. Rep. 655, where it was stated that a defense which is a good defense at law, can not be pleaded on equitable grounds, because it is only such a defense as could not formerly have been pleaded at law, that is now let in on equitable grounds. The equitable plea in this case set up the following matters: that on the 16th January, 1875, the property which is the subject-matter of the suit, was in the possession of the Trustees of the Annapolis Lodge No. 89, Ancient Free and Accepted Masons of Anne Arundel County, who on that date leased the land to Charles H. Hopkins and Spedden V. Wilson for a term of twenty years from that date. The lease is set out in full, and that paper recites that in contemplation of the lease,

Hopkins and Wilson had erected, at their own expense, a two-story frame building on the lot 20 by 90, south of and adjoining the Masonic Hall; that the Trustees, the party of the first part to the lease, were to have the full use of the second story of the building to be used by them in conjunction with a large room in the Masonic Hall, which is used for giving theatrical and other public entertainments, and for such other reasonable purposes to which the parties of the first part should see fit to apply them; that the parties of the second part were to pay all taxes and assessments levied and to be levied upon the lot so leased and the dwelling or dwellings erected thereon, and then follows this provision:

"Third. That they will further during the continuance of said lease keep the second story of said building in good and proper repair; that they will permit such portion of said lot as is not covered by said building to be used in common with them as a yard for the said Masonic Hall, and that they will not permit intoxicating liquors to be sold in said building during the continuance of said lease. And the said parties of the first part, for themselves, their heirs and assigns, covenant and agree that during the continuance of said lease, that they will pay the ground rent which shall accrue from time to time upon said lot. And it is herein further provided that at the termination of this lease, the said parties of the first part shall either lease said lot to the party of the second part or their assigns for another period of twenty years, subject to all the terms and conditions of this lease, or shall have the right to purchase of the said party of the second part, their heirs and assigns, the building aforesaid, as follows: If the parties are not able to agree upon the value of said building, then each of them shall appoint one appraiser to assess and value said property, and should said appraisers be unable to agree, then they the appraisers shall have the power to call in a third party as umpire, and the decisions of said appraisers shall be conclusive among the parties."

The plea then goes on to recite that on the 21st of January, 1875, Spedden V. Wilson assigned all his interest under the lease to James W. Holland, and a full copy of that assignment is given; that on June 13th, 1882, James W. Holland assigned to Charles G. Feldmeyer all his interest in the lot so acquired from Wilson, and a copy of that assignment is inserted in full; that on January 23rd, 1890, Charles H. Hopkins assigned all of his interest under the lease to Charles G. Feldmeyer, and that assignment is also fully set out.

The plea further recites that when the original term of twenty years expired, the lessors and their successors did not exercise the option to purchase, already mentioned in the original lease, made no offer to appoint appraisers for a valuation of the property, and gave no legal and sufficient notice to vacate; that the improvements erected by the defendants cost in the neighborhood of $3,000, and concludes, that to permit the plaintiff to recover in the action would allow him to escape the payment of the cost of improvements in accordance with the stipulations of the lease.

The facts set up by this equitable plea have thus been somewhat fully recited for the reason that this plea is almost identical with a plea filed on equitable grounds in the case of *Carpenter* v. *Wilson,* 100 Md. 13, in which this Court, after giving the substance of the equitable plea, said, that upon the facts recited, if properly proven, there could be no doubt that a Court of Equity would afford relief by enjoining any judgment of restitution which might be made in a Court of Law. The only important difference beteween the lease in the present case and that under consideration in *Carpenter* v. *Wilson, supra,* is that in the present lease there is no rent stipulated to be paid, but the lease does distinctly give to the lessors the full and complete right of user of the second story of the building erected on the lot in question, and this was apparently deemed by the parties, together with the covenant on the part of the lessee to pay the taxes, an equivalent for any rent. The plea on equitable grounds in

this case may be open to the criticism of being unduly prolix in setting out in full the original lease and assignments thereof, and undoubtedly the defendant could have framed an equitable plea relying upon the same facts without so giving these several papers *in extenso,* reserving the full text as matter of proof at the trial; but the mere fact that by thus fully setting out the several papers upon which the defendant relied the plea was made cumbersome, can not be regarded as making it legally bad, and when the trial Court sustained the demurrer to this plea, it committed error.

The demurrer to the third plea was also sustained, and properly so.   That plea was as follows: "And for a third plea, the said defendant says: that he is holding and in possession of said property in the declaration mentioned under the provisions of the original lease set out in the equitable plea and that said lease is still in force and effect."

' This plea involved a conclusion of law, rather than embodying a statement of fact, and as to the nature of the then holding of the premises by the defendant, the question was one to be raised by appropriately framed prayers, not by alleging legal conclusions by way of plea.   Code 1904, Art. 75, sect. 2, 1 *Poe on Pleading and Practice,* sect. 549; *Aetna Indemnity Co.* v. *Fuller,* 111 Md. 321.

The fifth plea, as already said, was a plea of *res adjudicata,* yet for some reason which does not appear in the record, the Court declined to receive such plea by the granting of the motion *ne recipiatur.*   If, as matter of fact, there had been prior litigation between the same parties involving the same subject-matter, carried to a point of final determination upon the merits, there was no reason why the defendant should not be permitted to show that fact.   Whether it is necessary to specially plead it, or whether evidence of such prior adjudication can be given under a general issue plea, may be open to considerable question, but *Mr. Poe,* in his valuable work on *Pleading,* sects. 655 and 656, lays it down as better practice to plead a defense of this character spe-

cially.  If the defendant failed to establish the matter thus
pleaded by proof, it could not avail him; while, on the other
hand, if he could so establish it, he was entitled to have the
pleadings so framed as to permit him to offer the evidence.
It was therefore error on the part of the trial Court to grant
the motion of *ne recipiatur*.

The first bill of exceptions in this case relates to evidence.
The plaintiff, Robert L. Werntz, was under examination,
and he was asked as to the rental value of the property
in question; to which objection was made, but the objection
was overruled and the witness permitted to answer.  The
declaration in this case was for the restitution of the prem-
ises, and for $1,200 damages; the lease upon which the
defendant relied named no rental whatever; if the plaintiff,
upon a proper construction of the terms of the agreement,
was entitled to the restitution of the premises, he was like-
wise entitled to recover damages, and one element of those
damages would consist in the rentals of the property of
which he had been deprived.  It was, therefore, proper upon
his theory of the case, that he should be thus permitted to
testify as to the rentals value as bearing upon the question
of damages.

The second exception was to the ruling of the Court,
excluding from consideration the record of a prior litigation
between the same parties, in regard to the same subject-
matter and which had been terminated by a verdict for the
defendant.  This was a natural consequence from the grant-
ing of the motion of *ne recipiatur* as to the defendant's fifth
plea.  In order to determine fully whether the exclusion
of this record was or was not correct, it becomes necessary
to examine the proceedings in the two cases with some degree
of particularity.  The present plaintiff acquired his title
to the property in the month of March, 1907, and on the
26th of that month, in a letter addressed to the defendant,
made a demand for the rent of the premises; no rent hav-
ing been received, and liability for rent having been denied,
Mr. Werntz instituted a suit in ejectment in the Circuit

Court for Anne Arundel County to the April Term, 1908;
to this the defendant filed various pleas, the second of which
was a plea upon equitable grounds, almost identical with the
plea upon equitable grounds filed in the present case; the
first and fourth pleas were identical, and there were two
additional pleas, to which a demurrer was sustained, and
which it is therefore not necessary to consider. The prop-
erty described in the declaration in this suit, was a lot 20
by 90 feet, known as No. 48 Maryland avenue, and was
testified on cross-examination by Mr. Werntz to be the
identical property for which the present suit was brought.
The parties to the record in that case were the same as
in the present proceeding, and the case was terminated by a
verdict of the jury before which it was tried, in favor of the
defendant, under instructions of the Court. What is neces-
sary for a valid defense by way of *res adjudicata* is suc-
cinctly stated in *Johnson* v. *Stockham,* 89 Md. 376, where
the rule laid down is, that "For successful defense on this
ground there must be identity of parties, identity of subject-
matter, a decision of the case on its merits, and jurisdiction
of the Court over both of the parties." In that case the
plea of *res adjudicata* failed by reason of the lack of juris-
diction. Cases might be multiplied in large numbers to
the same effect, and some even go further than the statement
just made. In *Trayhern* v. *Colbourn,* 66 Md. 278, it is said:
"That it is not necessary that the defense shall have been
taken on the precise point which is controverted in the
second case, a decree is *res adjudicata* as to all matters of
defense existing and which were available to the defendant
at its date." To the same effect are the cases of *Aurora
City* v. *West,* 7 Wall. 102; *State* v. *Brown,* 64 Md. 199;
*Barrick* v. *Horner,* 78 Md. 258; *Marine Bank* v. *Heller,* 94
Md. 213; *Albert* v. *Hamilton,* 76 Md. 309; *Hill* v. *McCon-
nell,* 106 Md. 574.

The appellee, upon this branch of the case, places reliance
upon the case of *Wisconsin* v. *Torinus,* 28 Minn. 135. In
that case the Minnesota Court draws a distinction between

the identity of the subject-matter of a suit, and the identity
of the cause of action, holding that a subject-matter might
be the same, and yet the cause of action different, so that an
earlier adjudication will not operate to prejudice rights
acquired after the first litigation, and which had not accrued
at the time of the rendition of the original verdict.    In
that case a suit had been brought by the State of Wisconsin,
but the suit failed because of the fact that the agent purport-
ing to represent the State, in entering into the contract
which was the basis of the action, had no authority to con-
tract as he did.    After such judgment the Legislature of
Wisconsin adopted and ratified the previously unauthorized
Act of the agent, and suit was again instituted, and *res
adjudicata* was pleaded as a bar to the action; but under
such a state of facts it is evident that the case came neither
within the letter or spirit of the rule, that a party can not
litigate the same question twice.    In the present case, Mr.
Werntz first acquired his interest in the property in question
in the year 1907; twelve years after the term named in the
original lease had terminated; the respective rights of Mr.
Werntz and Mr. Feldmeyer were already fixed, and between
1908, when the first suit was brought, and 1910, when the
second suit was instituted, there was but one possible thing
which could operate to alter the rights of the parties, viz.,
the original term of twenty years having expired in 1895,
if Mr. Feldmeyer and his predecessors by holding over
thereafter became tenants from year to year, then more than
a year having elapsed between the bringing of the two
suits, a year's tenancy had expired, and notice to vacate
having been given, the plaintiff was entitled to a restitution
of the premises.    On the other hand, if at the expiration
of the original term in 1895, the inaction of the parties
either as to renewal of the lease, or to the purchase by the
owners of the fee, of the improvements placed upon the
property by Hopkins and Wilson, had the effect of a renewal
for another term of twenty years, the rights of the parties

were identical in the two suits, and the plea of *res adjudicata* was properly interposed and a complete defense of the action.

This leads to a consideration of the third exception which was reserved by the defendant to the ruling of the Court on the prayers in the case.

The first prayer of the defendant sought to take the case from the jury upon the ground that the plaintiff had offered no evidence legally sufficient to entitle him to recover under the pleadings, and the second and third prayers of the defendant were predicated on the defendant's theory of the lease that there had been an implied renewal for a twenty year term. All three of these prayers were refused by the trial Court. One of the stipulations of that lease was: "That at the termination of this lease the said parties of the first part shall either lease said lot to the party of the second part or their assigns for another period of twenty years subject to all the terms and conditions of this lease, or shall have the right to purchase of the said parties of the second part, their heirs and assigns, the building aforesaid, as follows:" It is a concessum in the case that when the original twenty year term expired in 1895 nothing whatever was done either by way of executing a renewal lease, or a purchase of the property. The general rule in such cases is laid down in 24 *Cyc.* 993 (c), that "where a lessor covenants for a renewal or to pay for the improvements, the option rests with him to do one thing or the other. The lessee cannot compel a renewal and if the landlord elects to renew, the tenant cannot require payment for improvements." And the same general rule is contained in 18 *Am. & Eng. Ency.* 199, where it is said, "that the new periodical tenancy created by holding over is presumed to be upon the same terms as the preceding tenancy." And such was the holding in *McBrier* v. *Marshall,* 126 Pa. St. 390, where a tenant under a lease for five years held over after the expiration of the term, and was thereby construed to have renewed the lease for another period of five years. The rule in England is apparently clear, that "if there be a lease for a year and by consent of

both parties the tenant continues in possession afterwards, the law implies a tacit renovation of the contract. They are supposed to have renewed the old agreement." *Right* v. *Darby,* 1 Term Rep. 159; *Dougal* v. *McCarthy* (1893), L. R. 1 Q. B. Div. 739. In this country there is some apparent conflict of decision, attributable in the main to the special phraseology of the lease in the particular case. For example the case of *Hall* v. *Myers,* 43 Md. 451, hinged mainly upon the question of notice, but in that case there had been a lease for three years, but without a covenant for its renewal at the expiration of the original term, and when the tenant held over beyond the term of three years, he was construed to be a tenant from year to year. In *Hobbs* v. *Battery,* 86 Md. 68, the land had been leased for a period of one year, the tenant remained in possession after the expiration of the year with the consent of the landlord, and it was held that the law implied a new renting at the rental named in the lease. In this case, therefore, the result was the same whether the construction given to the holding over after the expiration of the original term was a renewal of the original lease for another like term, or of the creation of a tenancy from year to year. In the case of *Biggs* v. *Stueler,* 93 Md. 100, there was a renting for one year, and it was said that, "where real property is rented for one year and the tenant remains in possession after the expiration of the year with the consent of the landlord, the law implies a tenancy from year to year, but if upon the expiration of the first year of the tenancy there is an express renewal of the lease for another year, the tenant holds for the definite period of one year and not as tenant from year to year." The lease in this case does not appear to have contained any provision for a renewal. The case of *Falck* v. *Barlow,* 110 Md. 159, was strongly relied on by the appellee. A lease for ten years had been signed by the parties, but it was not acknowledged and recorded as required by law, and when a question arose between the landlord and tenant under this state of facts it was held, that since the lease had not been executed and recorded agreeably to law, the tenant was

not such by virtue of the lease, but that he was a tenant in fact, and by implication of law a tenant from year to year. The lease in the present case required the parties of the first part at the expiration of the original term to do one of two things; either, to give the parties of the second part a lease for a second period of twenty years, or to purchase the improvements placed on the property; there was thus an affirmative duty placed upon the lessors. They did not exercise their alternative right to purchase the improvements, or take any step in that direction, and were, therefore, bound to give a new lease for a second period of twenty years upon the same term as the first; and upon their failure so to do, and the tenant remaining in occupany of the premises with their consent, the law would imply a renewal in accordance with the terms of the original lease, the continued occupancy of the premises after the expiration of the original term having been down until 1907 with the full consent of the original lessors and their grantees, the mutual rights of landlord and tenant had thereby become fixed, and could not thereafter be altered save by the mutual agreement of the parties, which agreement has never been reached. These rights being fixed, it was beyond the power of Mr. Werntz alone to alter them between the time of the first trial and the second, and the record of the prior case should have been admitted, and its exclusion was reversible error.

It also follows from what has been said, that the first prayer of the defendant should have been granted.

For the errors in sustaining the demurrer to the equitable plea, the granting of the motion of *ne recipiatur* and exclusion of the evidence tending to support the plea of *res adjudicata,* and the refusal of the first prayer of the defendant, the judgment below must be reversed.

> *Judgment reversed without awarding a new trial, the appellee to pay the costs above and below.*