# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 1, 1915.

ALBERT A. BRAGER
VS.
OLIVE VIRGINIA BIGHAM, ET AL.

*Randolph Barton, Jr.*, and *Aubrey Pearre, Jr.*, for plaintiff.

*J. Wilson Leakin* for defendants.

BOND, J.—

It appears that the defendants are leasehold owners of property known as No. 233 North Eutaw street in Baltimore City, under an irredeemable lease for 99 years renewable forever, subject to a ground rent of $12 yearly; and the plaintiff is the tenant of the building and premises under a series of leases extended or renewed, the current one to expire on December 4, 1915. On January 24, 1888, the defendants' predecessor in title, John Plummer Bigham, trustee, did (to quote the words of the written instrument), "lease unto Joseph Sigmund the three-story building No. 233 North Eutaw street, near Saratoga street," for the term of one year

at a rental of $1,200, and thereafter for ten years at a rental of $1,600. The lease contained covenants for the improvement of the property by the lessee at his own expense to the extent and amount of $5,000, for the payment of water rent by the lessee, for the care of the property, ordinary wear and tear and damage by fire and the elements and from unavoidable causes excepted. And there were other covenants, for the cessation of rent while the property should continue unfit for occupancy as a result of fire, for keeping the property insured, and against assignment.

On September 1, 1888, this lease was assigned to Brager, with the written consent of the lessor.

On March 7, 1896, there was executed a new "lease and agreement," which recited that of 1888, and its approaching expiration, and did "demise and lease unto the said Albert A. Brager the building and premises in Baltimore City covered by the aforegoing lease, and known as 233 North Eutaw street," for a term of thirteen years at an annual rental of $2,000. This lease also contained covenants concerning the lessee's improvement or alteration of the premises, destruction by fire, care and insurance.

On March 16, 1901, however, another "lease and agreement" was executed, this time to extend the last lease until December 4, 1915. It contained a covenant that "if the said Brager should tear down the present building on said premises and erect another in its place, at said Brager's expense, said Brager hereby agrees to pay the yearly increase of taxes over and above the present assessment on the valuation of said property, if such increase of assessment is caused by reason of the erection of said new building," etc.

On March 16, 1906, pursuant to an agreement dated February 23, 1906, for an option to Brager, still another "lease and agreement" was executed. This recited the preceding instruments, and an agreement "to execute a new lease to the said Albert A. Brager on said premises known as No. 233 North North Eutaw street, in Baltimore City, subject to the terms and stipulations" thereinafter set forth. Then followed the statement that the lessors did "demise and lease unto the said Albert A. Brager, his personal representa-tives and assigns, the building and premises in Baltimore City known as No. 233 North Eutaw street for a term of years commencing on the 4th day of December, in the year 1915, and ending on the 3rd day of December, in the year 1935, at the rental of twenty-one hundred dollars ($2,100) per annum. The covenants concerning alterations, destruction by fire, insurance, and prohibiting assignment of the lease without consent of the lessors, were added as in the preceding instrument; and then followed a new covenant by Brager to tear down the existing building and erect another to cost not less than twenty thousand dollars, all before the 4th of December, 1915, or, in the alternative, to pay to the lessors the sum of ten thousand dollars.

On February 16th, 1915, the plaintiff, Brager, served upon the defendants, in accordance with Section 93 of Article 21 and Section 24 of Article 53 of the Code, a notice that he desired to redeem on a 6 per cent. basis the rent reserved in the lease of March 16th, 1906, covering the property No. 233 North Eutaw street, and that after 30 days he would be prepared with a deed and the money to cover the redemption price. The defendants refused to accede to this demand for redemption; and now the plaintiff prays a decree for its enforcement.

The answer admits the facts just set out, adds that the plaintiff has not erected the new $20,000 building or paid the alternative sum of $10,000, and raises questions of law. And the parties have argued and submitted the case on bill, answer and exhibits as if the answer were a demurrer.

There are two main questions raised:

(1) Do the statutes cited, in addition to providing for redemption of the familiar ground rent, also give a right to redeem the rent in a lease of a building, such as that with which we are dealing?

(2) If so, then under a lease which by its terms provides for possession and the payment of rent to begin only nine years hence, does the right of redemption come into existence in the meantime, so that it may be exercised before possession and the payment of the rent could begin?

On the first and larger question I believe there has been some difference of opinion at the bar during the thirty

years of the existence of the redemption statutes, but so far as I have learned there has been no adjudication of the point. The wording of the statutes does not, perhaps, plainly coincide with their known object, and this leaves the construction open to doubts. But there are other clues to the legislative intention. And in construing the statutes themselves we must be more than ordinarily cautious against deceiving ourselves with terminology.

When in Maryland, and especially in Baltimore City, we speak of leases and leasehold interests, we have to keep in mind a clear distinction between those leases under which ground rents have been created, and leases of houses or buildings. The two are different in kind. The lease for 99 years renewable forever, as it was drawn previous to 1884, while in form a lease of land, was in fact an instrument for the creation of a perpetual charge upon land owned and enjoyed by another. There could hardly be a fact in our legal and economic history more familiar to us than that.

"It is a peculiar description of tenure which has been sustained by our courts, and approved and fostered by our people." Banks vs. Haskie, 45 Md. 207.

The lease was merely the means of creating a specially favored security for the investment of money, and was not intended to give and did not give the owner of the rent any right or burden respecting the building upon the lot made subject to the rent. We call the rent secured a "ground rent," the common definition of which is a "rent paid for the privileges of building on another man's land," or "the compensation paid each year, or for a term of years, for ground leased for building or other improvement" (Webster, Standard and Century Dictionaries); and we speak of "redeeming" it; the language of a mortgage or pledge. The covenants appropriate to a building lease, such as those concerning repairs and upkeep of the property, and destruction by fire, could have no place in a lease creating a ground rent, and so are not included. There is no occasion for any covenants other than those necessary to secure the payment of the rent.

And that such is the real nature of this lease and of the interests created by it has been recognized by the law. In Pennsylvania, where the same form of investment was in vogue for some time, the interest of the lessee was treated as a fee-simple interest. (Bouvier's Law Dict., "Ground Rent.") The Maryland courts have stamped it as leasehold and personalty, but have recognized its peculiar character as ownership subject to a charge intended to be perpetual. Renewal may accordingly be enforced in equity, even after the expiration of the term so as to give effect to the intention that the security should be a perpetual one. (Banks vs. Haskie, 45 Md. 207.) And, although there is a remedy vouchsafed to the owner of the fee to protect his security in a measure, the doctrine of waste ordinarily applicable in the relation of landlord and tenant does not apply. (Crowe vs. Wilson, 65 Md. 479.) When a covenant for redemption at a definite future time is added to the instrument it becomes, says the Court of Appeals, "in substance and effect but little more than a mortgage." (Montague vs. Sewell, 57 Md. 407.)

Obviously, the distinguishing characteristics of the two forms of lease, according to their respective purposes, are that in the one there is a lease of land or "ground" merely, irrespective of any building on it, and that in the other there is a lease of a building with no more than incidental rights in the land underneath.

It is a most familiar fact, again, that the main object, if not the only object of these acts providing for redemption of rents, was to stop the creation of irredeemable ground rents. The title of the Act of 1884, Chapter 485, the first of the series, was "An act to prohibit the creation in future of irredeemable ground rents, and to regulate the leasing of land." And the Court of Appeals has said that the Act of 1888, Chapter 395, which was a continuation of the Act of 1884, with an amendment, "was the result of a well-grounded belief that these long leases, with their covenants of renewal, were injurious to the prosperity of the City of Baltimore, and that sound public policy demanded that all leases hereafter made, if for more than fifteen years, might be ended at the option of the tenant or lessee, upon paying the capitalization of his ground rent at six per centum." Stewart vs. Gorter, 70 Md. 242.

"Its purpose, as this Court has held, is 'to break up' the system of irredeemable rents." Swan vs. Kemp, 97 Md. 686, 690.

"The statute involved in those cases was passed because it was known that the system of irredeemable ground rents which had prevailed in Baltimore had been very injurious to the prosperity of the city, and a sound policy demanded that the right to redeem be given to holders of leasehold interests under such leases as the statute included." Spear vs. Baker, 117 Md. 393.

From such of the published discussions as I could find on objections made to these irredeemable ground rents at or about the time of the passage of the statutes, and from information I have obtained from judges and attorneys who have recollection of the discussion, it appears that there were four or five specific objections. For one, ground rents were so much sought as investments that buildings were being erected far in excess of any demand, merely in order to create the ground rents under them. And this was done upon loose, unsound financial arrangements which brought confusion and injury. There was a belief that this particular form of security withdrew capital from activities which might advance the prosperity of the city, and into a position of uselessness. Again, it was thought to produce a highly artificial, unfair charge in a long course of time, in that as the return upon capital naturally decreased this fixed unchangeable charge became disproportionately great on many lots. The inevitable splitting up of old lots subject to ground rents had produced accumulations of subleases and sub-rents, and so brought complaints of confusion in land titles. and unequal charges upon portions of these old lots. And the existence of these old rents, especially with the uncertainty and confusion in the titles to them, made real property in some instances unmarketable.

"It is well known from cases in this Court and otherwise that the complex system of ground rents in this State. often rendered titles unmarketable. although in some instances the rents had not been collected for many years, and some of them were for such a nominal sum and were owned by so many persons that it was difficult to obtain the

reversions for anything like a reasonable amount as compared with the rent reserved." Safe Deposit Co. vs. Marburg, 110 Md. 413-414.

But whatever may have been the controlling objections, I think I must take it to be unquestionable that all the mischiefs sought to be reached by the statutes were mischiefs which were incident to the system of ground rents, and which had no relation to rents in building leases. And if this be true, then the rent sought to be redeemed in the present case, although secured under a lease with a term beyond the limit of the statute in force at the time of its execution, was not within the mischiefs sought to be remedied by that statute.

But we are hardly permitted for this reason alone to exclude the present building rent from the operation of the statute. Statutes may, to assure the accomplishment of their main objects, be given much wider application. By the letter of these statutes they apply to "all leases or sub-leases of land" and "all rents reserved by leases or subleases of land," with terms beyond the specified limits. And the title of the first enactment of the series, as has been seen, declared its purpose to be "to prohibit the creation in future of irredeemable ground rents, and to regulate the leasing of land."

The word "land," however, seems hardly decisive. Its primary meaning is rather that of "ground" as distinguished from buildings or other fixtures. "Any ground, soil, or earth whatsoever, as meadows, pastures, woods, marshes, furze and heath (Bouvier's Law. Dict., "Land"). And this is the sense in which it is used in all the discussions concerning the extent of interest of a lessee of buildings or parts of buildings. A lessee of an apartment is said to have ordinarily no interest in the land. Whether there can be a lease of a whole building which carries no interest in the land seems to be a subject of some disagreement. (2 Taylor's Landlord and Tenant, Sec. 520; 24 Cyc. 1045; Ainsworth vs. Ritt, 38 Cal. 89; Humiston vs. Wheeler, 175 Ill. 514.) The general rule is that the lease of a building of necessity carries an interest in the land under it. (24 Cyc. 1045.) And it seems customary in Maryland to record leases of buildings for terms

longer than seven years as conveying "estates above seven years," within the meaning of Section 1 of Article 21 of the Code. But such leases are not direct leases of the land; the interests they convey in the land are incidental. And did the legislature intend that under a lease of any building or other fixture carrying such an interest in the land to which it is affixed, there should be a right of redemption of the rent? That is only the main question restated; and it is still to be decided.

It has been held unreasonable to construe the statutes to apply to a long lease of a railroad, although, in respect to so much as is affixed to the soil,' at least, it would come within "leases of land," according to one definition of "land." Buckler vs. Safe Deposit Co., 115 Md. 228.

It is significant that the two statutes (Section 250 of Article 16 and Section 171 of Article 93 of the Code) which provide steps for the redemption of rents owned by trustees, life tenants, owners of defeasible estates and infants, respectively, contemplate only the redemption of "ground rents." And it is specifically provided in the latter section that the infant shall upon redemption convey the fee and reversion : so that if one of the present defendants should have been an infant that section would not have availed the plaintiff, for the infant would not have had any title to the fee and reversion to convey. These sections are auxiliary statutes. And in giving them only this limited application there seems to be a clear legislative interpretation of the principal redemption statutes. Collateral legislative interpretations are not binding upon a court, it is true. But this one, in provisions for the furtherance of the main act, is persuasive— strongly persuasive when we note that the statute concerning redemption of rents owned by infants was passed by the General Assembly of 1900, which passed the redemption act upon which the plaintiff now proceeds.

And there seem to be difficulties standing in the way of applying the redemption statutes to building leases, and which argue that it is unreasonable to construe the statutes to have intended that application. One is that a building lease, with its more active interests in both parties, commonly has a variety of considerations not all expressed in rent. An illustration is furnished by the present case. There is a covenant that the lessee shall himself tear down the existing building and build another at a cost of at least $20,000, or pay the lessors $10,000, before the time of entry under the lease. It must be assumed that the amount of the rent stipulated for was to some extent controlled by the existence of this other covenant. And it seems reasonable to suppose that the alternative payment of $10,000 was a commutation of rent waived in consideration of the plaintiff's constructing a new building. All this is a proper arrangement; and the defendants very properly complain that if their whole interest in the property can be wiped out by redemption of the rent alone, it will upset the balance of considerations fixed by the parties and deprive the defendants of this $10,000. Similar instances of additional considerations may easily be imagined. I believe it is quite common in leases of buildings for stores to stipulate for a reduced rent in view of the consideration passing to the lessor from store fixtures to be installed by the lessee. In the lease of the present premises on January 24, 1888, there was a stipulation for improvements by the lessee to an amount of $5,000. Certainly the redemption statutes make no provision for rendering justice in such a condition; and I do not see that those statutes can be construed to apply to building leases without further construing them to prohibit any of these additional considerations other than rent, under penalty of losing them at the option of the lessee. And that does not seem a reasonable construction.

Still further, there may be leases of buildings which have no "rents reserved." For instance, the lease concerned in the case of Feldmeyer vs. Werntz, 119 Md. 285, was a lease of a building for 20 years without rent, and solely upon consideration that the lessee should keep and maintain a certain space for the lessor. (Cf. Underhill on Landlord and Tenant, Sec. 181). The statutes provide only for redemption of "rents reserved in leases and sub-leases of land"; so, if they are to be construed to apply to leases of buildings, then they will sometimes be defeated for want of reservation of rent to be redeemed. There is nowhere in our law a prohibition of leases in buildings partially or entirely upon consid-

eration other than rent. With the ordinary leases creating ground rents, it is to be noted, no such difficulties could arise because the whole purpose of those instruments is the reservation of rent.

But an act passed at the last session of the Legislature is still to be considered. The Act of 1914, Chapter 371 declares that the provision of the several redemption statutes:

"were not intended to apply and do not apply to leases or subleases of property leased for business purposes when such leases or sub-leases contain a clause prohibiting assigning or sub-leasing all or any part or parts of the property leased, without the written consent of the landlord, and where the term of such lease or subleases, including all renewals provided for therein, shall not exceed 25 years."

It seems reasonable to construe "leases of property leased for business purposes" to include building leases. Leases to create ground rents have ordinarily, and naturally, no covenants concerning the uses to which the leasehold owner may put the land. A lease of property for business purposes would usually be merely a lease of a business building.

As the lease we have under consideration provides for a term of only 20 years, and contains the covenant against assignment without the written consent of the landlord, then by the declaration of this Act, on its face, the redemption statutes do not apply to it. But it is clear that the distinction drawn in the Act between leases for business purposes, between those with terms of not more than 25 years and those with longer terms, between those with and those without the covenants against assignment, cannot by any possibility be read into the previous statutes by such a legislative construction, or otherwise. It is simply not in those statutes, and no amount of assertion will put it in them. If the General Assembly upon any basis could say that such a distinction was intended by the previous Assemblies it certainly could not say it upon the basis of any expression by those previous Assemblies; and the legislative expression alone constitutes the law. It seems clear, indeed, that the Act of 1914 can have force only (1) as original legislation applying the provisions of the redemption statutes to leases with terms longer than 25 years or without the covenants against assignment, or (2) as a legislative construction to the effect that the redemption statutes had application to some business leases. As original legislation, however, the Act could not affect the lease in this case, for that lease was executed prior to the Act and the rights of the parties as they resulted from the statutes then in force became at once fixed and vested, and beyond legislative interference.

Taking up the Act as a construction of the previous acts, it seems clearly to have been drafted upon the assumption, or at least apprehension, that these previous acts had application to leases for business purposes, which I have translated as building leases, as distinguished from those creating ground rents. And it seems to follow with equal clearness from the general terms of those acts that if they applied to any building leases they must have applied to all, attaching rights of redemption to all with terms longer than fifteen years. This is the effect for which the plaintiff contends. I am afraid that we are over-logical with the Act if we say, in the face of its contrary declaration, that it amounts to a legislative construction that the redemption statutes apply to all building leases with terms of fifteen years or more. But if it is to be given this effect, then we have only one more element to consider among the pros and cons on the construction upon which the plaintiff bases his claim for redemption; for, as has been said, a legislative construction of an older enactment is not binding on the courts. It may be found erroneous.

(See Mayor & City Council vs. Cahill, decided by the Court of Appeals, June 22, 1915, Daily Record of July 1, 1915.)

My conclusion is that the courts must find the Legislatures prior to 1914 to have intended to provide only for the redemption of ground rents, and not for the redemption of rents in building leases. The known purpose of the legislation, the legislative constructions in the auxiliary statutes cited, the difficulties—in some cases, the impossibility—of applying the statutes to ordinary building leases, all together, seem to me to compel a construction which

354.

excludes such an application, notwithstanding any contrary construction which may be deduced from the Act of 1914, Chapter 371. And I shall accordingly hold that there is no right of redemption under the plaintiff's lease.

I am aware that this construction of the redemption statutes is contrary to that upon which many members of the bar have acted since the passage of those statutes; and this fact has, of course, made me hesitate. But after all that may be, on the part of the bar, not so much construction as apprehension, to which caution gives the force of a rule. Or may it not be to some extent part of the body of "law taken for granted" against which Lord Denman warned?

"And I am tempted to take this opportunity of observing that a large portion of that legal opinion which has passed current for law, falls within the description of 'law taken for granted.' If a statistical table of legal propositions should be drawn out, and the first column headed 'Law by Statute,' and the second 'Law by Decision'; a third column, under the heading of 'Law taken for granted', would comprise as much matter as both the others combined. But when, in the pursuit of truth, we are obliged to investigate the grounds of the law, it is plain, and has often been proved by recent experience that the mere statement and re-statement of a doctrine,—the repetition of the cantilena of lawyers, cannot make it law, unless it can be traced to some competent authority, and if it be irreconcilable to some clear legal principle."

O'Connell vs. Queen, 11 Cl. & F. 372.

As the decision of this main question disposes of the case and fixes the decree, it is unnecessary, and I think unwise, for the court to decide the second main question stated above: whether under the statutes a right of redemption might attach during a period prior to the time stipulated for entry and payment of rent. If my decision so far is correct this remaining question is irrelevant. It may not be amiss, however, to add that it seems to me that the plaintiff's argument on the construction of the statutes in this respect cannot easily be overcome.

A decree dismissing the bill will be signed.