# WALTER E. BRADY

*vs.*

# HOWARD W. BRADY.

*Landlord and Tenant—Payment of Rent—Expenditures by
Tenant—Statements of Account.*

One cotenant having leased to the other the former's undi-
vided interest, with a covenant by the former to pay a named
proportion of the taxes, ground rent, insurance, and other neces-
sary expenses, *held* that evidence as to the course of dealing
between the parties during four years after the execution of the
lease, and of declarations by the lessor, in that regard, showed
that the rent was to be paid by the payment of the net balance
due the lessor upon an account stated from time to time after
deducting the named proportion of expenditures made by the
lessee.                                                    pp. 406, 408

The acceptance of a check for the balance shown by an
account stated to be due to the acceptor of the check involves a
ratification by him of the account.                        p. 406

In a lease by one cotenant to the other, the lessee's covenant
to pay rent and the lessor's covenant to pay his share of ex-
penses on the property *held* to be intended to be interdependent.
                                                            p. 408

In an action of ejectment by a landlord, based on the asserted
non-payment of rent, the burden on plaintiff of showing such
non-payment was not discharged by evidence that he had, dur-
ing a named period, not received any money or other thing of
value on account of rent, the terms of the lease authorizing the
lessee to deduct from the rent the amount of necessary expendi-
tures on the property, and accounts in plaintiff's possession,
furnished by defendant, showing that such expenditures during
this period exceeded the amounts of the rent payments.
                                                            pp. 409, 410

The lessor having covenanted to pay a certain proportion of
necessary repairs on the property, it is immaterial that such
repairs were made by the lessee without notice to the lessor.
                                                            p. 410

On an issue as to whether any rent was due plaintiff from defendant, the former having, during his examination in chief, testified that he had received no rent since a named date, it was proper to allow him to be asked on cross-examination whether he had not, during the period in question, received statements from defendant showing the state of accounts between them, and also checks in settlement of such statements.　　　p. 411

It being, under the circumstances, proper to cross-examine plaintiff as to the accounts and checks, it was no abuse of discretion to allow them to be admitted in evidence in connection with such cross-examination.　　　pp. 411, 412

The admission of evidence is not ground for reversal if the same facts are proved later without objection being made. p. 412

*Decided January 26th, 1922.*

Appeal from the Superior Court of Baltimore City (Gorter, J.)

Action by Walter E. Brady against Howard W. Brady. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before Boyd, C. J., Thomas, Pattison, Urner, Adkins, and Offutt, JJ.

*Charles Jackson,* with whom were *Jackson & Jackson* on the brief, for the appellant.

*R. E. Lee Marshall,* with whom were *Brown, Marshall, Brune & Parker,* on the brief, for the appellee.

Offutt, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City, entered on a directed verdict for the defendant in an action of ejectment for non-payment of rent, brought by Walter E. Brady, landlord, against Howard W. Brady, tenant, for the recovery of an undivided one-third interest in a leasehold property at the northwest corner of

Monroe Street and Patterson Avenue in Baltimore City, known as the "Fulton Coal & Wood Yard."

The father of the parties to this appeal founded and for many years carried on a coal business on that property under the name of "E. S. Brady & Co." At his death the title to it became vested in his two sons and his wife, each of whom held an undivided one-third interest therein.

After their father's death, Walter E. Brady and Howard W. Brady together carried on the business under their father's name until 1914, when Howard W. Brady bought out his brother's interest in the business, and on the 18th of April, 1914, Walter E. Brady leased to his brother his undivided one-third interest in the property. That lease, after providing that the term of the tenancy should be for two years at an annual rental of $333.36, payable quarterly in instalments of $83.34 on the first day of July, October, January and April, and that it could from time to time, at the option of the lessee, be renewed, so that the term could extend to March 31, 1924, but no longer, and that the lessee should keep a trestle on the premises in repair, contained this clause: "And the said Walter E. Brady doth hereby covenant that he will pay one-third of all taxes, ground rent, water rent, fire insurance premium and of all other legal charges or necessary expenses on or repairs to said property, except repairs to said trestle, during the term of this lease or any renewal thereof; the other two-thirds parts thereof to be paid by the owners of the other two—undivided—third parts of said premises." And in addition to that clause the lease contained the provisions ordinarily found in such an instrument.

From these facts it appears that the lessor and the lessee each occupied a dual relation to the property, and that, while the appellant as lessor was entitled to receive from the lessee rent for an undivided one-third interest in the property, at the same time, as a tenant in common with others of the whole property, he was bound to pay one-third of all the legal charges and expenses, such as ground rent, taxes, insurance, and the like, which might properly be charged

.against it, and such expenses as might be necessary to keep the property in repair.

As a practical and convenient manner of dealing with these respective rights and obligations, instead of collecting from the appellant his proportion of the expenses incurred for the repair of the property and the payment of ground rent, taxes and other charges properly chargeable against it, as such expenses accrued, and paying him the rent in full quarterly instalments, the appellee, at the time when each instalment of rent became due, rendered to the appellant a statement, in which the appellee charged himself with the rent due and credited himself with the appellant's share of such expenses paid by the appellee for the upkeep of the property, which the appellant in the lease had covenanted to pay, and if the account showed a balance in favor of the appellant, a check covering such balance was sent with the account. This course of dealing was begun when the first instalment of rent became due on July 1st, 1914, and was continued until April 1st, 1918, and in each instance, where the account showed a balance due the appellant, he received and accepted the balance in settlement of the account. These facts may be said to be undisputed, for, while the appellant said he disputed several of the accounts furnished prior to April 1st, 1918, he nevertheless accepted the appellee's check in settlement of them and thereby ratified them. Beginning, however, with the statement of July 1st, 1918, which showed a balance of $85.66 against the appellant, he refused to accept the amount claimed by the appellee in the statement to be due him, in settlement of the rent, and on August 24th, 1918, his attorney wrote the appellee that the lease was terminated as a result of its breach by the appellee, and inclosing a check for $135.32 "in full settlement of his contributive share of the accrued taxes, ground rent and water rent." This check was returned with a letter from the appellee's attorneys, denying any breach of the lease, and stating that the check was not based on the proper adjustment of the accounts between the parties. On October 1st,

1918, the appellee again rendered the appellant a statement, in which he charged him with one-third of the expense of a heating plant installed on the property in the place of an old one which had become worn out, and with one-third of an insurance premium, which, after crediting the accrued rent, left a balance of $141.51 due by the appellant to the appellee. The appellee continued to render such accounts to the appellant until April 1st, 1921, when the balance due by the appellant for his share of the expense of the upkeep of the property exceeded the amount due him for rent by a sum said to be $858.96. The appellant refused to accept these statements as a compliance with the lease and, his demands for rent having been refused, he brought this action of ejectment for the non-payment of rent.

The only issue in the case therefore is whether the rent named in the lease was duly paid by the appellee. Certainly it was not paid in the instalments named in the lease, and upon the facts of this case the question arises as to whether the payment of the net balance due to the appellant upon an account stated between him and the appellee can be regarded as a payment of the rent due under the lease in accordance with its terms, and the answer to that question depends upon whether the covenant on the part of the appellee to pay rent is to be construed in connection with the appellant's covenant to pay one-third of all taxes, ground rent, water rent and other expenses necessary to the upkeep of the property, or whether the two are to be regarded as independent covenants.

If we were dealing with the usual covenant on the part of a landlord to keep the leased premises in repair, the covenant would, under the weight of authority, be considered as entirely independent of the covenant to pay rent, and a failure to repair would be no defence to any action founded upon non-payment of rent (*Tiffany, Landlord & Tenant,* page 1237), and it is to covenants of that character that the cases relied upon by the appellant refer. But whether such a covenant on the part of the landlord is to be considered as independent of or dependent upon the lessee's covenant to

pay rent depends upon the intention of the parties. And if they are interdependent this rule, as stated in Mr. Tiffany's treatise on the law of landlord and tenant applies: "That is, if a particular stipulation by the landlord, and that by the tenant for the payment of rent, are 'dependent,' then the non-performance by the landlord is a defense to the claim for rent, while it is otherwise if the stipulations are 'independent.' This is merely an application of a general principle applicable to all contracts or instruments containing executory stipulations by both parties." And it is said in *Halsbury's Laws of England*: "Where the lessee is expressly authorized by the lease to make deductions from the rent, the balance represents all that is due to the lessor under the reservation of rent, and it is only such balance that he is entitled to recover, whether by distress or by action." 18 *Halsbury's Laws of Eng.*, sec. 949.

Applying these principles to the facts of this case, it is clear enough that the parties meant these two covenants to be construed together and as interdependent, and that therefore the amount payable by the lessee at each rent period should be the difference between the sums of money expended on his behalf for taxes, insurance, repairs and other expenses necessary for the upkeep of the property, and the sum due him for rent. Unquestionably the lease contemplated that the money for the payment of "taxes, ground rent, water rent, fire insurance premium and all other legal charges or necessary expenses or repairs to said property" should be advanced by the tenant in possession of the property, and when the lessor covenanted to "pay one-third" of such expenses he can only have meant that he would pay the persons who made such advances his proportion of the expense incurred. It was obviously impracticable to pay many of these charges in any other way. And this is the construction which the parties themselves placed on the contract. Howard W. Brady testified that by an arrangement between him and the appellant he was to advance the money for these expenses and reimburse himself from the rent and pay the

appellant the balance.   George H. Metcalf, the appellee's bookkeeper, said that Walter E. Brady gave him instructions to the same effect shortly after the lease was made: "The instructions were that the expenses, the taxes, ground rent, water rent, necessary repairs were to be made and paid by Mr. Howard Brady and that he was to reimburse himself at the end of the quarter out of the proceeds of the rents, and the balance was to be paid to Mr. Walter Brady." When asked whether he had had these conversations the appellant said: "I may have and I may not," and added that he did not remember such a conversation.

This testimony, in connection with the uniform course of dealing between the parties for four years, and with the language of the lease itself, shows beyond dispute how the rent was to be paid.

Inasmuch as the plaintiff in this case assumed the burden of proving that the appellee had not paid the rent fixed by the lease in the manner and at the times stipulated therein, it was incumbent upon him to show that, after deducting, from the rent due by the appellee to the appellant, the proportion of expenses incident to the upkeep of the property properly chargeable to him, there remained a balance due the appellant for rent.   The principal question in the case is whether he met that burden, and that question is raised by the fifteenth exception, which relates to the court's action in ruling that as a matter of law the evidence in the case was not legally sufficient to show that the plaintiff was entitled to the possession of the property.

The plaintiff's theory is that he discharged that burden by proving the lease, and proving that he had not received any money on account of rent for the property since April 1st, 1918, but in our opinion that was not sufficient, since he was bound to show not only that he had not received any money or other thing accepted in lieu thereof on account of rent, but that, after deducting the advances made in accordance with the terms of the lease on his behalf by the lessee from the rent specified in the lease, there was a balance of rent

unpaid and due him, since the money advanced for the payment of expenses which the appellant agreed in the lease to pay was in itself a payment of the rent.

Many of the expenses paid by money advanced by the appellee were of such a character that the appellant must be assumed to have known that their payment within certain periods was imperative and, since he had not paid them, he must also have known that the appellee had paid them for him, and since the uncontradicted evidence shows that he had in his possession accounts furnished by the appellee, showing the amount due him for rent and the amount due by him for repairs and other expenses, he cannot, by merely proving the credits due him in such accounts and ignoring the debits charged against him, show an indebtedness due him. All of these accounts were not offered in evidence, but the uncontradicted testimony is that they show a balance due by the appellant to the appellee for money advanced for the upkeep of the common property in excess of any rent due him. Whether those accounts are true, or whether the charges are proper, are questions which are not before us in this case, and upon which we are not called upon to pass, since it is sufficient to say that from all the evidence in the case the appellant has failed to show that the appellee owed him any rent which he failed to pay. It is true that it is intimated in certain of the correspondence that some of the repairs to the common property for which the appellant was charged were unnecessary, improper and made at an excessive cost, but there is no sufficient affirmative evidence of those facts.

That there was no notice to the appellant that the repairs made were needed, or that the appellant did not agree to them, amounted to nothing, if the repairs were necessary, since the appellant by covenanting to pay for necessary repairs to the common property, knowing that the appellee was the only person to order them, thereby authorized him to make them. If the amounts deducted for the repairs were excessive, or if the repairs were not necessary, those facts can be shown in an appropriate action for the recovery of rent

claimed to be due, but in this action, where it is shown without contradiction that the appellee did make the repairs, and paid for them, and that they were necessary, we cannot assume, in the absence of any evidence legally sufficient to support the presumption, that they were unnecessary or that the charges for them were excessive.

For the reasons indicated we find no error in the ruling of the court involved in this exception.

The remaining exceptions relate to questions of evidence. Exceptions numbered one to seven deal with the rulings of the lower court in permitting counsel for the appellee to ask the appellant on cross-examination whether he had not rendered quarterly statements showing the state of the account between the parties relative to the amount of rent due and advances made for expenses incident to the upkeep of the property, and whether he had not received checks settling such statements, and they also present the appellant's objection to the admission of these statements and checks in evidence on the cross-examination of the appellant.

The appellant, in his examination in chief, had testified that he had received no rent for the property since April, 1918. Whether under the terms of the lease any rent was due for that period was a relevant inquiry. The fact that he had, on and prior to April, 1918, received accounts showing the rent due and the deductions therefrom on account of advances for expenses incurred for taxes, repairs and other expenditures for the upkeep of the property, had some relevancy to that question, as indicating the manner in which, according to the course of dealing between the parties, the rent due under the lease had been paid, and in view of the latitude allowed in the cross-examination of a party to the cause we find no error in these rulings.

The admission of the "accounts" and "checks" in evidence upon the defendant's offer in the cross-examination of the plaintiff presents however a different question. But since, under the circumstances, it was proper to cross-examine the plaintiff as to them, we cannot say that, in admitting the

papers in evidence at that stage of the case, there was any abuse of the discretion vested in the trial court. In discussing a similar question in reference to the admission of a letter during the cross-examination of a witness as to it in *The Queen's Case,* 2 Brod. & Bing. 289, it was said: "That, if the counsel, who is cross-examining, suggests to the court that he wishes to have the letter read immediately, in order that he may, after the contents of that letter shall have been made known to the court, found certain questions upon the contents of that letter, to be propounded to the witness, which could not well or effectually be done without reading the letter itself, that becomes an excepted case in the courts below, and, for the convenient administration of justice, the letter is permitted to be read at the suggestion of the counsel, but considering it, however, as part of the evidence of the counsel proposing it, and subject to all the consequences of having such letter considered as part of his evidence."

The eighth, ninth and tenth exceptions present objections to the admission of testimony showing that, when the appellant bought out his brother's interest in the coal business, it was arranged that he was to carry on the business on the same premises, and that that arrangement contemplated a lease of his brother's interest in the property and that the lease was made in purusance of that arrangement. The relevancy of this testimony to any issue in the case is not clear, but in view of the disposition of the case, and as it could not have possibly affected our conclusion as to that, we find no reversible error in these rulings.

The eleventh and twelfth exceptions refer to the admission of testimony showing that the appellant had himself agreed that the appellee should deduct from the rent due advances made on account of expenses incident to the upkeep of the property, and that the statements referred to were in accordance with that agreement. As the same facts were proven later without objection, we find no reversible error in these rulings.

The thirteenth exception relates to the admission of testimony offered to show that the repairs charged to the appellant under the terms of the lease were necessary.  In our opinion that testimony was material and was properly admitted.

The appellee offered a certified copy of docket entries in an action in ejectment between the same parties in the Baltimore City Court, and this evidence was admitted over appellant's objection, and this ruling is the subject of the fourteenth exception.  The evidence was immaterial and irrelevant and should not have been admitted.  But as the appellant could not under the circumstances possibly have been injured by its admission, we find no reversible error in this ruling.

Finding no reversible error in the rulings involved in the exceptions before us, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*