UNIVERSITY PLAZA SHOPPING CENTER, INC. *v.*
RAMON E. GARCIA T/A SILVER
SPRING MARKET

[No. 67, September Term, 1976.]

*Decided January 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Alan W. Margin*, with whom were *Stephen Leventhal* and *Margin & Leventhal* on the brief, for appellant.

No brief filed on behalf of appellee.

ORTH, J., delivered the opinion of the Court.

This case comes to us upon grant of writ of certiorari to the Circuit Court for Prince George's County which heard the case on appeal from the District Court of Maryland. The only issue for decision is whether a sum of money, said to be due University Plaza Shopping Center, Inc. (Landlord) from Ramon E. Garcia (Tenant) under an indenture of lease between them (the lease), was rent. If it were rent, the Circuit Court for Prince George's County was wrong in affirming a judgment of the District Court entered upon the grant of Tenant's motion to dismiss an action in summary ejectment instituted by Landlord against Tenant. We find that the sum was rent. Therefore, we reverse the judgment of the Circuit Court for Prince George's County and remand the case for further proceedings consistent with this opinion.

The lease was for the rental of a store in a shopping center.[1] The store was to be used principally for the sale of groceries. Tenant agreed to pay a fixed minimum rent, and, in addition, a certain percentage rent. By § 2.05 of the lease Tenant was obligated to pay as "additional rent" any money required to be paid pursuant to certain designated sections of the lease, "and all other sums of money or charges required to be paid by Tenant under this lease, whether or not the same be designated 'additional rent'." The section further provided that if such amounts of charges were not paid at the time provided in the lease, "they shall nevertheless, if not paid when due, be collectible as additional rent with the next installment of rent thereafter falling due", with the proviso that "nothing herein contained shall be deemed to suspend or delay the payment of any amount of money or charge at the time the same becomes due and payable hereunder, or limit any other remedy of the Owner."

By § 5.01 of the lease Landlord was obligated, at its cost and expense, to construct the leased premises for Tenant's use and occupancy in accordance with plans and specifications prepared by Landlord's architect, incorporating in such construction all items of work described in Exhibit B appended to the lease and made a part thereof. It was expressly provided, however, that:

> "Any work in addition to any of the items specifically enumerated in said Exhibit 'B' shall be performed by the Tenant at its own cost and expense. Any equipment or work other than those items specifically enumerated in said Exhibit 'B' which the owner installs or constructs in the leased premises on the Tenant's behalf shall be paid for by

---

1. The lease was on a printed form bearing the designation "Recommended Lease — International Council of Shopping Centers, Inc.". The form was adapted to the situation of the parties. It consisted of twenty-six Articles divided into numbered Sections. Appended to the lease was a document containing "Rules and Regulations", which Tenant agreed to observe, and certain covenants and agreements, binding on the Landlord and Tenant, supplementing those in the lease.

the Tenant within fifteen days after receipt of a bill thereof at cost, plus twenty (20%) percent for overhead and supervision."

Work was performed by Landlord on Tenant's behalf to adapt the premises to the use contemplated in addition to that specified in Exhibit B. Those "extras of construction" were for a drywall ceiling and ceiling bulkhead, air conditioning, electrical work (relocating thermostats, outlets and switches) and plumbing (hot water lines) at a cost of $2486 plus 20% overhead for a total of $2983.20. This amount was not paid by Tenant as the lease required. Landlord filed a complaint for summary ejectment in the District Court showing that rent was due and unpaid in the amount of $2983. Before trial, Tenant filed a motion raising preliminary objection or, in the alternative, for dismissal, based on the contention that the amount claimed was not rent. The court withheld its ruling on the motion until after evidence was adduced. At the close of all the evidence Tenant renewed the motion, the court held the matter *sub curia* and ultimately, by order issued 5 December 1975, granted the motion and dismissed the case. Landlord noted an appeal to the Circuit Court for Prince George's County.[2] The Circuit Court for Prince George's County heard the appeal on the record made in the District Court, and, after oral argument, affirmed the District Court's judgment.

Maryland Code (1974, 1975 Cum. Supp.) Real Property Article, § 8-401 (a) provides:

"Whenever the tenant under any lease of property, express or implied, verbal or written, shall fail to pay the rent when due and payable, it shall be lawful for the landlord to have again and repossess the premises so rented."[3]

---

2. A landlord has 30 days from the date of the final judgment in which to appeal. Maryland Code (1974, 1975 Cum. Supp.) Courts Article § 12-401 (b) (1). A tenant, however, has only 2 days from the rendition of the judgment to appeal. Code, (1974, 1975 Cum. Supp.) Courts Article § 12-401 (b) (2) and Real Property Article § 8-401 (f).

3. The procedures to be followed by the landlord to have again and repossess the premises are set out in § 8-401 (b) of the Real Property

The Circuit Court for Prince George's County construed this statute in arriving at its ruling. In a memorandum opinion accompanying its order, it explained that, although, under the lease, Tenant was liable for the payment of the cost of the "extras", Landlord could not collect it or repossess the premises because of the failure to pay it, through the remedies provided by § 8-401. Those remedies, the court opined, were exclusive, applicable only upon failure to pay *rent*, as evidenced by the provisions of § 8-401 (b) which permit a landlord to pray "by warrant to have again and repossess the premises, together with judgment for the amount of rent due and costs." The court did not think the cost of the "extras" was rent in contemplation of the statute. The court found that it was not the intention of the Legislature to include as rent "such items as additional construction and specific improvements even though the lease agreement called for such items to be considered as 'additional rent'." [4]

We are not in accord with the view of the court below. The Legislature prescribed certain rights and liabilities which accrued upon the failure to pay "rent." Although it could have set out what was to be included as rent within the ambit of the statute, it did not do so. There being no statutory definition, we look to the common law and the case law.

It appears that the state courts and the federal courts are in substantial agreement that "rent", in its legal connotations, is the compensation paid by a tenant for the

---

Article. Certain aspects of the conduct of the trial are prescribed by subsection (c). Subsection (d) deals with the removal of the tenant for noncompliance with a judgment in favor of the landlord, and subsection (e) concerns the tenant's right to redeem the premises prior to eviction.

4. The judge presiding in the Circuit Court for Prince George's County in the case *sub judice* had reached the same conclusion in another case previously before it, Kay Management Company, Inc. v. Collins, Law No. 53,358, with respect to late charges and attorney fees upon failure to pay rent, and designated in the lease as "additional rent." He referred to his opinion in that case in arriving at his ruling in the instant case. The question whether late charges and attorney fees may be rent within the contemplation of § 8-401 is not before us, and our decision here, is not to be considered as passing on the propriety of the lower court's ruling in the prior case.

use of land.[5] This is in accord with the more elaborate definition set out in 3 H. T. Tiffany, *The Law of Real Property* § 876 (3rd ed., B. Jones, 1939):

"Rent may be defined, in a general way, as a tribute or return of certain amount, which is regarded as issuing out of the land, as part of its actual or possible profits, and is payable by one having an estate in the land, as compensation for his use, possession and enjoyment of the land. . . ."

It seems that in this State rent is also thought to be payment for the tenant's use, possession and enjoyment of the land. Two cases which touch on the matter indicate that, if the payment is to this end, and susceptible to definite ascertainment in amount, it shall be considered as rent, subject to the intention of the parties. So in *Feldmeyer v. Werntz*, 119 Md. 285, 289, 86 A. 986 (1913), the payment of taxes on the land was deemed to be rent, although not specifically named as rent, because a covenant on the part of the lessee to pay the taxes was found to be the equivalent to an agreement to pay rent. In *Theatrical Corp. v. Trust Co.*, 157 Md. 602, 146 A. 805 (1929), the lessor and the lessee expressly agreed that the lessee would pay, as rent, taxes, water rent, and fire insurance premiums in excess of certain amounts. The Court held that these amounts were to be included in the total rent for purposes of capitalization of the rent for redemption, as they constituted "a part of the rent reserved according to the specific agreement between the parties contained in the lease," and were "easily subject to definite ascertainment in amount." *Id.*, 157 Md. at 617. *Feldmeyer* and *Theatrical Corp.* were cited and applied in *In Re Bonwit, Lennon & Co.*, 36 F. Supp. 97, 101-102 (D. Md., 1940). *See* Annot., 88 A.L.R. 884 (1934). The importance of the intention of the parties in determining whether a payment by a tenant is rent was recognized by the Supreme

5. The various state and federal cases are collected in United States Steel Corporation v. United States, 270 F. Supp. 253, 259 (S.D.N.Y. 1967), *affirmed in part and reversed in part*, 445 F. 2d 520 (2d Cir. 1971), *cert. denied*, 405 U. S. 917 (1972).

Court of the United States. In *M. E. Blatt Co. v. United States*, 305 U. S. 267, 59 S. Ct. 186 (1938), the question was whether certain improvements were rent. The Court said, *id.*, at 277: "Even when required, improvements by lessee will not be deemed rent *unless intention that they shall be is plainly disclosed.*" (emphasis added)

3 H. T. Tiffany, *The Law of Real Property*, § 879 (3rd ed., B. Jones, 1939) is not in accord. It states that "[a]ll payments which a lessee agrees with the lessor to make, are not necessarily rent. . . . And this appears to be so regardless of whether the parties refer to such payments as rent, since what constitutes rent is a question of law and not of intention." *Tiffany* recognizes that there are decisions to the effect that an agreement by the lessee with the lessor to pay the taxes is in effect one to pay rent, but he submits as the proper view "that sums thus to be paid to a third person, not a representative of the lessor, do not constitute rent." *Id.*, § 879. Despite *Tiffany's* view, we shall follow the lead of our predecessors. We think that it is consistent with the rationale of our prior opinions, which, although few in number, have not been overturned that between a landlord and a tenant, insofar as their respective rights and obligations are concerned in their relationship each with the other, charges which may be definitely ascertained, paid by the tenant, and going to his use, possession and enjoyment of rental commercial premises, are rent if such was the intention of the parties. We limit our holding at this time to premises leased for commercial purposes as distinguished from residential use. We are of the mind that in the negotiation of a lease of premises to be used for a commercial enterprise there is little likelihood of successful overreaching on the part of the landlord and of coerced adhesion on the part of the tenant, so that the final agreement would fairly represent the actual intention of the parties. We expressly leave open the question whether similar charges under a lease of residential property would be rent. In any event, the matter is best left for determination on a case to case basis, depending upon the provisions of the lease, express or implied, verbal or written, and, where appropriate, the attendant circumstances.

In the case before us, there was a demise of commercial premises. Under the terms of the express, written agreement, the charges were subject to definite ascertainment in amount, and, in fact, were definitely ascertained to be in the amount of $2983.20. The work for which the charges were due, performed on Tenant's behalf, was obviously to adapt the premises to the use permitted by the lease. That the charges went to Tenant's use, possession and enjoyment of the demised premises is so clear as not to require discussion. The intention of the parties that the charges be rent is manifest from the provisions of the lease relating thereto. Those provisions are susceptible of a clear and definite understanding, and there being no showing of fraud, duress, or mutual mistake, reflect the intention of the parties and, thus, govern their rights and liabilities. *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 368, 137 A. 2d 687 (1958). *See Orkin v. Jacobson*, 274 Md. 124, 128-129, 332 A. 2d 901 (1975); *Rothman v. Silver*, 245 Md. 292, 296, 226 A. 2d 308 (1967); *Rafferty v. Butler*, 133 Md. 430, 432, 105 A. 530 (1919). As we have noted, § 2.05 of the lease provided that any money required to be paid by Tenant under certain specifically designated sections was to be paid as "additional rent." Although the charges here did not fall within any of those specifically named sections, they were certainly within the clause of § 2.05 immediately following, obligating Tenant to pay as additional rent "all other sums of money or charges, required to be paid by Tenant under this lease, whether or not the same be designated 'additional rent'." The charges here were required to be paid by Tenant under § 5.01 of the lease. Thus, even though not so specifically designated as such, they were to be paid as additional rent. It was the clear intendment in light of § 2.05 that charges pursuant to § 5.01 be paid as rent. We conclude that the $2983 was rent.

As the amount of $2983 claimed to be due Landlord from Tenant was rent, and as Tenant failed to pay such rent, Landlord was entitled to the remedies prescribed by Code (1974, 1975 Cum. Supp.) Real Property Article § 8-401. Therefore, the District Court erred in dismissing Landlord's

action in summary ejectment, and the Circuit Court for Prince George's County erred in affirming the judgment entered in the District Court.

> *Judgment of the Circuit Court for Prince George's County reversed; case remanded for further proceedings consistent with this opinion; costs to be paid by appellee.*