901 A.2d 249

**LAW OFFICES OF TAIWO AGBAJE, P.C.,**

v.

**JLH PROPERTIES, II, LLC.**

No. 2705, Sept. Term, 2004.

Court of Special Appeals of Maryland.

June 29, 2006.

---

358

Taiwo Agbaje, Baltimore, for appellant.

Claire E. Buchner (Timothy F. Maloney, Joseph, Greenwald & Laake, PA, on the brief), Greenbelt, for appellee.

Panel: DAVIS, KENNEY and ROBERT L. KARWACKI, (Ret'd, specially assigned), JJ.

KENNEY, J.

The Law Offices of Taiwo Agbaje, P.C. ("Lessee") appeals the Circuit Court for Prince George's County's grant of summary judgment to JLH Properties II, LLC ("Lessor") in a landlord-tenant proceeding instituted pursuant to Maryland Code (1974, 2003 Repl.Vol.), § 8–401 of the Real Property Article. Lessee presents three questions for our review, which we have consolidated into the following: [1]

Did the circuit court err in granting summary judgment to Lessor because genuine disputes of material fact exist concerning the amount of rent due under the lease?

We answer that question in the affirmative and shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

In May 2003, Lessee and Lessor entered into a three year commercial lease agreement (the "Lease"). Lessee covenant-

---

1. Lessee posed the following:
   I. The trial court erred in granting summary judgment as a matter of law because there were material factual issues in dispute, which barred summary judgment?
   II. The trial court erred as a matter of law in granting summary judgment where the appel[l]ant testified about repair problems rendering the office space 100 percent unusable and mandating a full abatement of rent as expressly provided for in the lease agreement?
   III. The trial court erred in granting [a] money judgment to appellee for rent of $9,600, late fees of $960 and costs when there was no personal service upon appellant?

ed to pay $600 per month in rent, and Lessor covenanted to furnish Lessee an office suite located at 14610 Main Street, in Upper Marlboro, Maryland (the "Property"). The Lease also provided, in relevant part:

7. L[essee] agrees that in case of fire or other casualty resulting in damage to the premises, they will give immediate notice thereof [to] the L[essor], who shall thereupon, with expedition and in a good and workmanlike manner, after said damage, enter upon and undertake such repair and rehabilitation, as is necessary to restore said premises to their original condition before such damages, with reasonable dispatch, provided that the necessary labor and materials are available to the L[essor] for restoring said premises to their original condition.

In the event that said demised premises are subject to repair and rehabilitation within a reasonable time, *the rental herein shall be abated in the proportion that the amount of space which is not available to and usable by L[essee] as a result of such casualty and or the work and labor incidental to its rehabilitation bears to all of the space in the demised premises.*

In the event that said demised premises shall at any time during the demised term be totally destroyed by fire or other casualty, or shall be rendered partly untenantable, and the repair and rehabilitation of said demised premises shall be of an extent requiring more than ninety (90) days for its completion, then this Lease, at the option of either L[essee] or L[essor] may be terminated and the obligation to make rental payments thereupon shall cease as of the date of such damages or destruction.

\* \* \*

10. It is further agreed that if the rent aforesaid shall at any time be in arrears and unpaid for more than ten (10) days, a late fee of ten percent (10%) and all attorney's fees; costs of litigation/collection or any other expense incurred in collecting unpaid rent or possession of the leased premises shall become rent which is immediately due for the purpose

of this lease and will be added to the rent, should L[essee's] failure to pay rent not be cured within ten (10) days of its receipt of written notice of any default from L[essor]. . . .

(Emphasis added.)

Lessee was aware that there was some water damage to the Property, but it agreed to the Lease and commenced occupying the Property shortly afterwards. Lessee contends, however, that, after moving in, it immediately noticed "raw waste water" seeping into the Property. Due to the problems associated with the raw wastewater seepage, including a foul odor and appearance, Lessee asserted that, after "two to three months," the Property became one-hundred percent "[u]nusable as a law office." As a result, Lessee claims to have contacted Lessor and demanded that the full rental be abated. Lessee ceased paying rent in September 2003, but did not request termination of the Lease, did not remove personalty from the Property, and did not return the keys to the Lessor.

On April 28, 2004, Lessor filed a complaint in the District Court of Maryland for Prince George's County seeking repossession of the Property and unpaid rent pursuant to Maryland Code (1974, 2003 Repl.Vol.), § 8–401 of the Real Property Article ("R.P."). The complaint was apparently dismissed because it named Taiwo Agbaje, personally, as the tenant.

Subsequent to Lessor's filing in the District Court, Lessee filed a complaint in the Circuit Court for Prince George's County, alleging, among other things, breach of contract, intentional misrepresentation, and negligent misrepresentation (the "Breach of Contract Case"). In its complaint, Lessee alleged, in relevant part, that it had informed Lessor of the wastewater problems, that Lessor had promised to repair the problems, and that the persistent odor and damage associated with the wastewater rendered the Property unusable as a law office. Beginning in October 2003, Lessee ceased paying rent, and between October 2003 and March 2004, Lessee and Lessor agreed that no rent was due as long as the water damage persisted. According to the complaint, instead of "repairing the plumbing problem" in March 2004, Lessor replaced the

damaged carpet in the Property with ceramic tiles. Lessee claimed that it suffered damage as a result of Lessor's failure to abate the water problem, including loss of business and damage to files and a filing cabinet.

On June 23, 2004, Lessor filed a second complaint in the District Court properly naming Lessee as the tenant. In its amended complaint, Lessor sought $6,540 in total accrued and future rent (the "Ejectment Case"). On June 30, 2004, Lessee filed a response, in which it denied liability and requested a jury trial. The Ejectment Case was removed to the Circuit Court for Prince George's County, apparently without objection.[2]

On October 15, 2004, Lessor moved for summary judgment in the Ejectment Case. Lessee opposed Lessor's motion for summary judgment and moved to consolidate the Ejectment and Breach of Contract cases, maintaining that the two causes arose from the same factual circumstances. In support of its motion, Lessee attached, as an exhibit, its complaint in the

---

2. The appropriateness of the removal is unclear from this record. The District Court has exclusive original jurisdiction in an ejectment proceeding between a landlord and tenant brought under R.P. § 8–401. Such actions are excepted from the $5,000 "amount in controversy" provisions of C.J.P. § 4–402(d) establishing concurrent jurisdiction in the circuit court. Courts and Judicial Proceedings § 4–401(e) establishes a right to a jury trial "[i]n a civil action in which the amount in controversy exceeds $10,000 exclusive of attorney's fees." Real Property § 8–601 relates to jury demands in such cases and R.P. § 8–604(a)–(f) subjects a jury trial request to review by the District Court. That review is limited to the timeliness of the demand, the amount in controversy, and the existence of a valid waiver.

Here, the claim for money damages was less than $10,000 and Lessee's pleadings indicate "the value of the right to possession" of the Property was $0. *See Bringe v. Collins*, 274 Md. 338, 347, 335 A.2d 670 (1975) (considering the right to a jury trial in landlord-tenant actions, and concluding that "[f]or a party in a landlord-tenant action to be entitled to a jury trial, there must be a claim for money damages over [the statutory or constitutional limit at which the right to a jury trial attaches] or a claim that the value of the right to possession exceeds [the statutory or constitutional limit]"). *See also Carroll v. Housing Opportunities Comm'n*, 306 Md. 515, 525, 510 A.2d 540 (1986) (defining the tenant's value of the right to possession as the fair market value of the rental of a comparable property for the duration of "the time period for which the tenant has a right to continued possession").

Breach of Contract Case and the affidavit of Taiwo Agbaje, the law firm's "managing attorney." In his affidavit, Agbaje claimed, in pertinent part:

3. That [Lessor] is not owed any rent.

4. That on or about May 15, 2003, [Lessee] entered into a lease agreement for office space at 14610 Main Street Suite 103 with [Lessor] for $600 per month.

5. That [Lessor] received over $2000 in rent payments from [Lessee].

6. That [Lessor] has not and did not provide a tenantable space to [Lessee] for the monies received.

7. That beginning from the inception of the [L]ease, the [Property] repeatedly and continuously experienced waste water and raw sewage flooding for over a year which rendered the [Property] not tenantable and which problem was not repaired by the [Lessor] despite repeated notice and which caused the [Lessee] damages in excess of $50,000.

8. That this led to [Lessee] bringing a suit for damages against the [Lessor], [a] copy of which is attached hereto as Exhibit 2, and is scheduled for a jury trial before th[e] [circuit] [c]ourt in [the Breach of Contract Case.]

9. That [Lessor] is not entitled to possession because no rent is owed and [Lessor] has not provided tenantable space to [Lessee] for monies already received from [Lessee].

On November 10, 2004, Lessor filed a response to Lessee's opposition to summary judgment. Lessor also opposed the consolidation of the two cases, claiming that there were no common questions of fact or law. According to Lessor, the "*in rem* proceeding for summary ejectment concerns completely different and undisputed facts, law, and subject matter at issue in the *in personam* breach of contract and tort proceeding."

A hearing on Lessor's motion for summary judgment commenced on January 7, 2005. During the hearing, Lessee did not dispute that it had continuously occupied the Property, in some capacity, since May 2003 but had not paid rent since September 2003. Rather, Lessee argued that it had notified

Lessor of the wastewater problem and that no rent was due under the Lease because the wastewater problems rendered the Property subject to repair and rehabilitation and wholly unusable. Lessor asserted that, not only was it entitled to accrued and future rent, but also late fees, and attorney's fees under the Lease.

According to the circuit court, Agbaje's affidavit offered in opposition to the motion for summary judgment failed to demonstrate that Lessee was entitled to rent abatement. The court opined that, in order for Lessee to claim one-hundred percent abatement, Lessee needed to formally request termination of the Lease. With regard to Lessee's assertion that it was entitled to abate rent under the Lease, the court determined:

> What, in effect, would be a counterclaim or defense to the rent you have chosen instead to raise in a separate legal action. Whatever damages you recover in the other action may offset the judgment entered in this case, but it is not [the] court's obligation to consolidate these cases and delay the proceedings unnecessarily.

In an oral opinion, the court awarded judgment of possession in favor of Lessor and awarded $9,600 in accrued rent, plus an additional $960 in late fees. A record of the January 7 hearing was not entered into the docket until January 19, 2005, when the court's written order granting summary judgment to Lessor was also finally entered. The docket entries reflect that Lessee's motion for consolidation was denied as "moot."

Meanwhile, on January 12, 2005, Lessee filed a "Motion for New Trial," in which it alleged that the court erred in granting summary judgment to Lessor because there were disputes of material fact concerning whether Lessee was entitled to abate rent under the Lease. Additionally, Lessee claimed that the court erred in not consolidating the Breach of Contract Case and the Ejectment Case. Attached as exhibits to its "Motion for New Trial" were a copy of the complaint in the Breach of Contract Case, a copy of the Lease, pictures pur-

porting to show the Property in disrepair, the affidavit of Reginald McFadden, who is an experienced "handyman," and a letter purportedly written by Lessor's counsel, William Monks.

The letter purportedly written by Monks stated, in relevant part:

> This office represents [Lessor] with regard to the leasehold of [Lessee] for the premises at 14610 Main Street, Suite 103, Upper Marlboro Maryland. In response to your letter of January 7, 2004, [Lessor] will not abate any further rent. In accordance with the terms and provisions of your lease, the rent shall be paid in advance on the first (1st) day of the month.
>
> [Lessor] has made all repairs and abated your rent in accordance with paragraph 7 of the lease. While the water damage caused by the negligence of the first floor tenant was unfortunate, the lease anticipated such maintenance issues and [Lessor] made the appropriate rent abatement in accordance with the terms and provisions of the [L]ease.
>
> Your failure to pay the January 1st rent put you in breach of the [L]ease. Should my client have to file suit to recover this rent, we will move the Court for all costs and expenses of litigation, including charges for reasonable attorney's fees.

On January 27, 2005, the court denied Lessee's "motion for new trial or reconsideration." This timely appeal followed.

## STANDARD OF REVIEW

■ Lessor contends that, "[b]ecause the trial court's denial of [Lessee's] motion for new trial was the final order under Maryland Rule 8–202(c), [Lessee's] appeal of the gran[t] of summary judgment is not properly before the [C]ourt." We disagree.

In the instant case, Lessee filed its post-trial motion on January 12, 2005. Although the motion was entitled "Motion for New Trial," therein Lessee claimed that the circuit court

erred in granting summary judgment to Lessor because there were genuine disputes of material fact resolved by the court at the January 7 hearing. Lessee requested "an order granting a new trial," and "any other relief that may be just and proper." Accordingly, as noted by the circuit court in denying the motion, Lessee's post judgment motion more properly should have been entitled a "Motion for New Trial and or Revision of Judgment."

In addition, we recognize that the post-judgment motion was filed before the docket sheet indicated the disposition of Lessor's motion for summary judgment and before a written order disposing of the Ejectment Case was entered. Nevertheless, at the January 7 hearing, the circuit court indicated that it granted summary judgment in favor of Lessor, and the court's written order granting Lessor's motion for summary judgment is dated January 7, 2005.

■ Pursuant to Maryland Rule 2–601, it is the responsibility of the clerk of the circuit court to promptly enter the court's judgment in the docket. Here, the court's judgment was not entered until January 19, 2005. As the Court of Appeals recently explained in *Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 400–01, 849 A.2d 504 (2004), where a post-judgment motion is filed within ten days of the court's judgment, but before the judgment is entered, while technically premature because of the clerk's failure to timely enter the order, the post-judgment motion should be treated as if timely filed.

Therefore, because Lessee filed a timely post-judgment revisory motion within ten days of the court's judgment, its motion should be treated as a Rule 2–534 Motion to Alter or Amend. *See Alitalia Linee Aeree Italiane v. Tornillo*, 320 Md. 192, 200, 577 A.2d 34 (1990) (noting that, regardless of the title, a revisory motion filed within ten days of the court's judgment "will be treated as a Rule 2–534 motion and have the same effect on appeal time").

Maryland Rule 8–202(c) provides, in relevant part, where a party files a timely Rule 2–534 motion, "the notice of appeal

shall be filed within 30 days after entry of (1) a notice withdrawing the motion or (2) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534." The court's order denying Lessee's Rule 2–534 motion was entered on January 31, 2005. Lessee filed its notice of appeal on February 7, 2005, within thirty days. Accordingly, Lessee's appeal was timely and we may consider the merits of the circuit court's grant of summary judgment.

Maryland Rule 2–501(f) states that a court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." We review "a trial court's grant of a motion for summary judgment *de novo*." *Remsburg v. Montgomery*, 376 Md. 568, 579, 831 A.2d 18 (2003). *See also Todd v. Mass Trans. Admin.*, 373 Md. 149, 154, 816 A.2d 930 (2003); *Beyer v. Morgan State Univ.*, 369 Md. 335, 359, 800 A.2d 707 (2002); *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443, 795 A.2d 715 (2002). "The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. The standard of appellate review, therefore, is whether the trial court was legally correct." *Williams v. Mayor of Baltimore*, 359 Md. 101, 114, 753 A.2d 41 (2000).

When reviewing a grant of summary judgment, we first determine whether a genuine dispute of material fact exists "and only where such dispute is absent will we proceed to review determinations of law." *Remsburg*, 376 Md. at 579, 831 A.2d 18. "In so doing, we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Id.* at 579–80, 831 A.2d 18.

"Finally, [i]n reviewing [the circuit court's] decision to grant a motion for summary judgment, we evaluate 'the same material from the record and decide[ ] the same legal issues as the circuit court.' " *Campbell v. Lake Hallowell Homeowners*

*Ass'n,* 157 Md.App. 504, 518–19, 852 A.2d 1029 (2004) (quoting *Crews v. Hollenbach,* 126 Md.App. 609, 624, 730 A.2d 742 (1999)) (alterations in Campbell). We "uphold the grant of a summary judgment only on the grounds relied on by the trial court." *Ashton v. Brown,* 339 Md. 70, 80, 660 A.2d 447 (1995).

## DISCUSSION

### I.

■ Before considering Lessee's arguments, we consider whether there is a final judgment in this case. At the January 7, 2005 hearing, the court declined to address Lessor's requests for interest and attorney's fees, stating that the issues were "still pending." Real Property § 8–401 permits a landlord to recover late fees, but there is no provision that permits the court to award litigation costs or attorney's fees. The Lease provided that rent was to include all attorney's fees and litigation costs incurred in collecting unpaid rent. We are persuaded, however, that, despite the characterization of such damages as rent, attorney's fees and costs were not recoverable in this case. We explain.

In *University Plaza Shopping Ctr., Inc. v. Garcia,* 279 Md. 61, 367 A.2d 957 (1977), the Court of Appeals considered whether costs incurred by a landlord to adapt the premises for a tenant's use and which the lease defined as "rent" could be collected by the landlord in a summary ejectment proceeding. The court noted that "rent" is not defined by statute, but is generally defined as "payment for the tenant's use, possession and enjoyment of land." *Id.* at 65–66, 367 A.2d 957. Citing *Theatrical Corp. v. Trust Co.,* 157 Md. 602, 146 A. 805 (1929), and *Feldmeyer v. Werntz,* 119 Md. 285, 289, 86 A. 986 (1913), the *Garcia* Court noted that the payment of taxes, insurance premiums, and required improvements could be considered rent depending upon the parties' agreement. In the context of a commercial lease, the Court held that "charges which may be definitely ascertained, paid by the tenant, and going to his use, possession and enjoyment of rental commercial premises, are rent if such was the intention of the parties." *Id.* at 67,

367 A.2d 957. The Court determined that the work performed in adapting the rented property for the tenant's use was rent and could be collected in a summary ejectment proceeding.

More recently, in *Shum v. Gaudreau*, 317 Md. 49, 562 A.2d 707 (1989), the Court of Appeals again considered what types of damages could be recovered by a landlord in a summary ejectment proceeding. In that case, a landlord prevailed in an ejectment proceeding and was awarded possession of the property and one month's rent. Approximately one month later, the landlord filed a breach of contract action against the tenant, seeking recovery for damages to the property and costs incurred for maintenance services both before and after the tenant's departure. The lease at issue required the tenant to return the property in the same condition as when it was received and defined "rent" to include all "repairs and renovations to the leased premises" that the landlord incurred in returning the property to its original condition. *Id.* at 64–65, 562 A.2d 707. In the breach of contract case, the tenant argued that, because the definition of rent in the lease included repair costs, the landlord could have recovered those costs in the ejectment proceeding. And, because the landlord failed to seek those damages in the ejectment proceeding, the doctrine of *res judicata* precluded recovery in the breach of contract case.

The *Shum* Court determined that, generally, contract damages could not be sought in a R.P. § 8–401 ejectment proceeding. According to the Court, the resolution of "possible complexities of proof" as to contract damages would be inimical to the purpose of the ejectment statute, to provide a speedy repossession of the premises and a straightforward calculation of damages. *Shum*, 317 Md. at 60, 562 A.2d 707. The Court then went on to consider the situation where the lease defined contract damages *as rent*. Relying upon the definition of "rent" in *Garcia*, the *Shum* Court determined that only those repairs and maintenance costs that could fairly be attributed to the tenant's "use, possession and enjoyment" could be collected in a summary ejectment proceeding. *Id.* at 64, 562 A.2d 707. Therefore, the costs associated with improv-

ing the property for the tenant's use were collectable in the ejectment case, and the landlord's claim in the breach of contract case to those damages was barred by *res judicata.* But, those costs associated with returning the property to its original condition were not "designed to enhance [the][t]enant's use and enjoyment of the premises, but rather to put the property in proper shape for reletting." *Id.* at 67, 562 A.2d 707. As a result, recovery for those costs was not precluded in the breach of contract case.

■ Here, the attorney's fees that Lessor incurred in the ejectment proceeding did not relate to the Lessee's use and enjoyment of the Property. Moreover, it is well settled that to recover attorney's fees and expenses claimed as damages for a breach of contract the plaintiff must prove entitlement to such damages " 'with the certainty and under the standards ordinarily applicable for proof of contractual damages.' " *Commercial Union Ins. Co. v. Porter Hayden Co.,* 116 Md. App. 605, 703, 698 A.2d 1167 (1997) (quoting *Bankers & Shippers Ins. Co. v. Elec. Enters. Inc.,* 287 Md. 641, 661, 415 A.2d 278 (1980)). The plaintiff must establish that the fees sought are reasonable, and, without a specific and detailed accounting of the services actually performed, "the reasonableness, *vel non,* of the fees can be determined only by conjecture or opinion of the attorney seeking fees and would therefore not be supported by competent evidence." *Maxima Corp. v. 6933 Arlington Dev. Ltd. P'ship,* 100 Md.App. 441, 453–54, 641 A.2d 977 (1994).

As the *Shum* Court explained, such a complex factual inquiry would frustrate the expedited design of the summary ejectment statute. Although Lessor may be entitled to recover reasonable attorney's fees incurred in connection with the Lessee's alleged breach of its contractual obligation to pay rent, if any, in a breach of contract proceeding, such fees are not "rent" and, therefore, are not recoverable in a R.P. § 8-401 summary ejectment proceeding. Even though the circuit court reserved on the issue of costs and attorney's fees, such an award was not recoverable in this case. As a result, we are

persuaded that the court's grant of summary judgment is a final judgment for the purposes of this appeal.

## II.

Lessee contends that the circuit court erred in granting summary judgment because there were genuine issues of material fact concerning whether the wastewater problems at the Property implicated the abatement provision in the Lease. According to Lessee, its duty to pay rent was dependent upon Lessor fulfilling its obligation to keep the Property in repair. Moreover, Lessee claims that the Property is located in a "multi-use building containing residential dwelling units and small office space" and that the plumbing and utility room from where the wastewater entered were used in common with the dwelling units, thereby implicating R.P. § 8–211. According to R.P. § 8–211(i), where notice of "serious and substantial defects and conditions" is provided to the landlord and the landlord fails to undertake repair, "the tenant may refuse to pay rent and raise the existence of the asserted defects or conditions as an affirmative defense to an action for distress for rent or to any complaint proceeding brought by the landlord to recover rent or possession of the leased premises."

Lessor contends that there are no genuine disputes of material fact, noting that Lessee admits to having executed the Lease, to taking and retaining possession of the Property, and to not paying rent since September 2003. According to Lessor, Lessee's covenant to pay rent was independent of the abatement provision of the Lease and that, in any event, as a matter of law, Lessee cannot claim that the Property was one-hundred percent unusable while continuing to occupy it and pay no rent.

### A.    Real Property § 8–211

■ We first consider Lessee's contention that R.P. § 8–211 applies to the instant case. Lessee did not raise this issue before the circuit court in its opposition to Lessor's motion for summary judgment or at the January 7 hearing. The argu-

ment was raised for the first time in Lessee's motion to alter or amend. Accordingly, Lessee's argument that the instant case is controlled by an application of R.P. § 8–211 has not been preserved for our review.

Appellate review is governed by Maryland Rule 8–131(a), which provides:

> Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

This Court does, however, have discretionary authority under Rule 8–131 to review matters not previously raised at trial.

Recently, in *Jones v. State*, 379 Md. 704, 843 A.2d 778 (2004), the Court of Appeals considered whether this Court exceeded its discretion by excusing a procedural default in an appeal from a post-conviction proceeding. Interpreting Rule 8–131, the Court of Appeals stated that the primary purpose of the Rule is to "ensure fairness for all parties and to promote the orderly administration of law." *Id.* at 713–14, 843 A.2d 778. Moreover, the Court noted that when "presented with a plausible exercise of this discretion, appellate courts should make two determinations concerning the promotion or subversion of 8–131(a)'s twin goals." *Id.* at 714, 843 A.2d 778. The *Jones* Court determined that "the appellate court should [first] consider whether the exercise of discretion will work unfair prejudice to either of the parties." *Id.* "Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice." *Id.* at 715, 843 A.2d 778.

■ An application of the two-part test to the instant case reveals that discretionary review is unwarranted. First, exercising discretionary review in this case would unfairly prejudice Lessor. As the Court of Appeals has explained: "The interests of fairness are furthered by 'requir[ing] counsel to bring the position of their client to the attention of the lower

court at trial so that the trial court can pass upon, and possibly correct any errors in the proceedings.' " *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107 (1994) (*quoting Clayman v. Prince George's County,* 266 Md. 409, 416, 292 A.2d 689 (1972)). Second, requiring matters to be resolved by the trial court prior to appeal permits a potential error to be corrected and the risk of subsequent trials avoided. We, therefore, decline to consider the application of R.P. § 8–211 to the instant case.[3]

### B.   Contractual Defenses to Payment of Rent

■   Under Paragraph Seven of the Lease, upon notice by Lessee of damage to the Property, Lessor covenanted to undertake repair and rehabilitation of the Property and restore it to its original condition "with expedition and workmanlike manner." More importantly for Lessee, in the event that the Property was subject to repair and rehabilitation, Lessee was permitted to abate rent "in the proportion that the amount of space which is not available to and usable by Lessee as a result of such casualty."

Lessor contends that, under *Brady v. Brady,* 140 Md. 403, 117 A. 882 (1922), its obligation to keep the Property in a state of repair was independent of Lessee's covenant to pay rent. Therefore, any failure by Lessor to keep the Property in a state of repair did not relieve Lessee of its obligation to pay the $600 monthly rental. We disagree.

In *Brady,* the Court of Appeals considered whether a tenant's obligation to pay rent was dependent upon the landlord's obligation to pay ground and water rent and other "expenses necessary to the upkeep of the [leased] property." *Id.* at 407, 117 A. 882. The lease in *Brady* provided, in pertinent part:

---

3.   We note that R.P. § 8–201(a) states that "[t]his subtitle is applicable to residential leases unless otherwise provided." Real Property § 8–211(c) provides, in pertinent part: "This section applies to residential dwelling units leased for the purpose of human habitation within the State of Maryland."

"And the said Walter E. Brady doth hereby covenant that he will pay one-third of all taxes, ground rent, water rent, fire insurance premium and all other legal charges or necessary expenses on or repairs to said property, except repairs to said trestle, during the term of this lease, or any renewal thereof; the other two-thirds parts thereof to be paid by the owners of the other two-undivided-third parts of said premises."

*Id.* at 405, 117 A. 882.

Through their course of dealing, the tenant, also the owner of an undivided interest in the property, would provide statements in which he indicated the amount of rent due. He would thereafter deduct the rental amount from the amount the landlord agreed to pay to maintain the property. Where the amount of rent exceeded the maintenance fee, the tenant forwarded a check to the landlord for the balance. Eventually, the landlord's obligation to pay one-third of the maintenance on the property exceeded the amount of the rental due, leaving the balance in favor of the tenant. Accordingly, the tenant billed the landlord, who disputed the bills and demanded a full rental payment from the tenant. When the tenant refused, the landlord filed an action in ejectment for nonpayment of rent.

According to the *Brady* Court, the crux of the issue was whether "the covenant on the part of the [tenant] to pay rent is to be construed in connection with the [landlord's] covenant to pay one-third of all taxes, ground rent, water rent, and other expenses." *Id.* at 407, 117 A. 882. In concluding that the landlord's duty to repair was not independent of the tenant's duty to pay rent, the Court opined:

If we are dealing with the usual covenant on the part of a landlord to keep the leased premises in repair, the covenant would, under the weight of authority, be considered as entirely independent of the covenant to pay rent, and a failure to repair would be no defense to any action founded upon nonpayment of rent. And it is to covenants of that character that the cases relied upon by the appellant refer.

But whether such a covenant on the part of the landlord is to be considered as independent of or dependent upon the lessee's covenant to pay rent depends upon the intention of the parties. And if they are independent this rule as stated in Mr. Tiffany's treatise on the law of landlord and tenant applies:

"That is, if a particular stipulation by the landlord, and that by the tenant for the payment of rent are 'dependent,' then the non-performance by the landlord is a defense to the claim for rent, while it is otherwise if the stipulations are 'independent.' This is merely an application of a general principle applicable to all contracts or instruments containing executory stipulations by both parties."

And it is said in Halsbury's Laws of England:

"Where the lessee is expressly authorized by the lease to make deductions from the rent, the balance represents all that is due to the lessor under the reservation of rent, and it is only such balance that he is entitled to recover, whether by distress or by action."

*Id.* at 407–08, 117 A. 882 (internal citations omitted).

Here, we are persuaded that Lessee's covenant to pay rent was not independent of Lessor's covenant to keep the Property in a state of repair. As in the language relied upon by the *Brady* Court, the Lease expressly permits Lessee to abate rent in proportion to the amount of usable space remaining as a result of Lessor's failure to repair and rehabilitate the Property. Only the rental for that proportion of the Property that was "available to, and usable by Lessee" was due, and "it was only such balance that [Lessor] [wa]s entitled to recover." *Brady,* 140 Md. at 408, 117 A. 882.

The Restatement (Second) of Property § 11.1 provides that, where a tenant is entitled to abatement, the tenant may assert that right in an ejectment proceeding brought by the landlord. Comment b states, in relevant part:

b. *Manner of accomplishing rent abatement.* Frequently the rent abatement will be accomplished in a judicial pro-

ceeding brought by the landlord to evict the tenant for failure to pay the rent. In this proceeding, if the tenant is entitled to abate the rent, he is entitled to defend against eviction by establishing his right to abate the rent and paying to the landlord the amount of the abated rent as judicially determined in the proceeding.

If the tenant has paid the rent stipulated to in the lease during the period of time when he was entitled to an abatement of rent, he is entitled to sue for the excess he has paid to the landlord and the judicial proceeding will establish the proper amount of the abated rent for the period of the landlord's default.

Reporter's note 5 to section 11.1 explains, in pertinent part: Where the tenant is entitled to an abatement of rent and has paid the rent as properly abated, such payment must be a valid defense to the landlord's suit to recover possession on the ground of nonpayment of rent. If it were the case that the tenant could be dispossessed even after paying rent, the rent abatement remedy of this section would be meaningless.

Moreover, not permitting a tenant to assert a contractual abatement provision as a defense in an ejectment proceeding would result in unnecessary litigation. Pursuant to R.P. § 8–401(e), which applies "[i]n any action of summary ejectment," a tenant has a right to redeem the leased premises prior to eviction by paying "all past due amounts," in addition to costs and fees. Assuming that a tenant was actually entitled to rent abatement, but could not assert that right in an ejectment proceeding, the tenant would be required to pay the full rental specified in the lease in order to assert his or her statutory right of redemption. To recoup the excess paid, the tenant would be required to file a collateral breach of contract action against the landlord. Such a result does not further judicial economy.

■ We hold that, where a lease provides for an abatement of rent, the tenant may assert the abatement provision in an ejectment proceeding instituted under R.P. § 8–401. Courts

in other jurisdictions have similarly held that, where a tenant is entitled to abatement, it can be asserted as a defense to an action by the landlord for possession or ejectment. *See Hsu v. Thomas,* 387 A.2d 588 (D.C.Ct.App.1978); *Academy Spires, Inc. v. Brown,* 111 N.J.Super. 477, 268 A.2d 556 (1970); *Morbeth Realty Corp. v. Velez,* 73 Misc.2d 996, 343 N.Y.S.2d 406 (Civ.Ct.1973); *Miller v. Ritchie,* 45 Ohio St.3d 222, 543 N.E.2d 1265 (1989); *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979).

■ Here, Lessee raised the issue of abatement both in its opposition to Lessor's motion for summary judgment and at the January 7 hearing. In its affidavit offered in opposition to summary judgment, Lessee claimed that it repeatedly notified Lessor of the wastewater problems at the Property. Moreover, due to the wastewater problems, the Property was rendered "not tenantable" and was in such a state of disrepair that it was entirely unusable. Under the Lease, Lessee was only required to pay rent in proportion to the amount of the Property that was actually usable for its intended purpose as a law office. The issue of whether the Property was rendered unusable, and if so, to what extent, and thus, the amount of the rental owed, were questions of fact improperly resolved by the circuit court on a summary judgment motion.

Real Property § 8–401(c) provides, in relevant part:

(2)(i) If, when the trial occurs, it appears to the satisfaction of the court, that the rent, or any part of the rent and late fees are actually due and unpaid, the court shall determine the amount of rent and late fees due as of the date the complaint was filed, if the trial occurs within the time specified by subsection (b)(3) of this section.

(ii) 1. If the trial does not occur within the time specified in subsection (b)(3)(i) of this section and the tenant has not become current since the filing of the complaint, the court, if the complaint so requests, shall enter a judgment in favor of the landlord for possession of the premises and determine the rent and late fees due as of the trial date.

2. The determination of rent and late fees shall include the following:

A. Rent claimed in the complaint;

B. Rent accruing after the date of the filing of the complaint;

C. Late fees accruing in or prior to the month in which the complaint was filed; and

D. Credit for payments of rent and late fees made by the tenant after the complaint was filed.

(iii) The court may also give judgment in favor of the landlord for the amount of rent and late fees determined to be due together with costs of the suit if the court finds that the residential tenant was personally served with a summons, or, in the case of a nonresidential tenancy, there was such service of process or submission to the jurisdiction of the court as would support a judgment in contract or tort.

In the instant case, clearly the Lessor was subject to the jurisdiction of the court. Once the issue of Lessor's liability was resolved, the circuit court had authority under R.P. § 8–401(c) to award a monetary judgment against Lessee. Because the amount of the rent actually due was the subject of a material dispute of fact, however, the amount of damages was also in dispute.

Lessee filed a breach of contract action, but, in that case, it is seeking recovery for excess rent paid, expectation and consequential damages, and actual damage to its personalty. Lessee would not have been entitled to recovery of those damages in the ejectment proceeding, and the fact that Lessee sought to recover damages for breach of contract does not preclude it from asserting the contractual abatement provision defining rent in the instant ejectment proceeding.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**